Bruce D. Praet SBN 119430
FERGUSON, PRAET & SHERMAN
A Professional Corporation
1631 East 18th Street
Santa Ana, California 92705
(714) 953-5300 telephone
(714) 953-1143 facsimile
bpraet@aol.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JENNIFER LANDEROS, et al.<br>Plaintiffs,<br>vs.<br>SAMUEL SCHAFER, et al.,<br>Defendants. | ) | No.: 2:17-cv-02598 KJM CKD<br>**DEFENDANTS' TRIAL BRIEF**<br>**[Local Rule 285]**<br>**TRIAL: TBD**<br>**TIME: TBD**<br>**CTRM: 3, 15TH Fl.** |

**1. PREFATORY STATEMENT.**

Fortunately, counsel for the respective parties have longstanding professional relationships which should minimize disputes beyond those which will be separately addressed *in limine*, separate pre-trial motions and finalizing jury instructions. While the respective positions on each of these issues will be separately addressed, Defendants will provide an overview of anticipated issues.

In order to facilitate the smooth introduction of exhibits, Defendants will be utilizing trial support personnel who will coordinate with Court staff in advance.

**2. SUMMARY OF FACTS**

After spending the entire day of November 30, 2016, at home, Daniel Landeros (decedent) insisted on driving to get a six-pack of beer in spite of having a suspended driver's license resulting from prior DUI's. Not knowing that Daniel

was under the influence of 1508 ng/ml of methamphetamine, his passenger wife, Jennifer, suddenly became frightened when Daniel began driving erratically at high speed and running red lights. At Jennifer's insistence, Daniel pulled the curb, let her out of his truck and then drove away.

Daniel eventually drove at a high rate of speed eastbound in the westbound lanes of Elk Grove Blvd. into oncoming traffic which prompted several frantic 911 calls. Unfortunately, before any Elk Grove police officers could intercept Daniel, he crashed head-on into three innocent vehicles, creating a major collision with several seriously injured motorists. When Officers Holstad and Schafer arrived at the hectic collision scene, they noticed Daniel walking away with blood on his face.[1] However, when officers asked if he had been involved in the collision, Daniel ran across the center median and three lanes of traffic, yelling "*fuck you, you're not real*". Realizing that they could not allow him to flee from the scene of a potentially felony hit and run collision, not knowing what other crime he may have been fleeing from and fearing that he might run into traffic lanes, officers pursued Daniel on foot, yelling at him to stop.

Instead of complying, Daniel turned to face officers with clenched fists while he continued to yell obscenities. Not knowing whether Daniel may be armed and not wishing to engage in a physical altercation with an individual likely under the influence of drugs, Officer Schafer deployed his Taser at the fleeing suspect. Whether the result of his bulky jacket or otherwise, the Taser had zero effect other than to cause Daniel to again turn to face officers with clenched fists. Officer Schafer deployed his Taser a second time which had the desired effect of causing Daniel to collapse onto the grass.

/ / /

[1]The majority of the remainder of this incident has been captured on BWC video which will be presented to the jury.

Officers Holstad and Schafer were able to roll Daniel onto his stomach and into handcuffs before he began resisting and his continued yelling. Because a Taser had been deployed and, in light of Daniel's pre-existing head injury, Officer Schafer immediately called for a supervisor and Fire/EMT's. Since Daniel continued to kick and struggle, Holstad and Schafer summoned help from the officers arriving to tend to the injured motorists and major traffic control issues. When Officer Scott arrived, Daniel promptly kicked him in the chest until Scott was able to secure Daniel's legs with a Figure 4 hold. Officer Banks also joined and held Daniel's head turned to the side to prevent him from further injuring himself and to ensure his airway was not blocked.

Rather than continuing to fight with Daniel, officers held him down by his shoulders while holding his legs to prevent further kicking (as the video depicts, no officer ever applied weight directly to Daniel's torso). While officers awaited the preparation of the WRAP device (sometimes compared to placing a combative subject into a "burrito"), they suddenly noticed that he had stopped resisting. Concerned for his welfare, officers detected that he was "turning blue" at which point officers immediately turned him onto his back, found no pulse and promptly commenced CPR while awaiting the arrival of previously requested medics. Unfortunately, Daniel could not be revived at the hospital.

Although couched in a number of theories ranging from "negligence" to "excessive force" to *Monell* claims, the central question in this case is whether Daniel Landeros died of so-called "restraint asphyxia" attributable to officer conduct (i.e. Plaintiffs' theory) or a drug induced heart attack (Defendants' theory). On this dispositive issue, Plaintiffs have retained Dr. Ronald O'Halloran. Defendants, on the other hand, will rely on the percipient Sacramento County Forensic Pathologist Dr. Jason Tovar and retained expert, Dr. Theodore Chan.

/ / /

/ / /

**3. ADMISSIONS AND STIPULATIONS NOT RECITED IN THE PRETRIAL ORDER.**

Defendants believe that all admissions and stipulations are already addressed in the Pretrial Conference Order.

**4. POINTS OF LAW.**

Pursuant to the Court's direction in the Pretrial Conference Order [Dkt. 36], Defendants will first address the issue of bifurcation.

**A. DEFENDANTS REQUEST THAT ISSUES OF LIABILITY AND DAMAGES BE BIFURCATED.**

Regardless of the legal theory, a determination of liability will be solely based upon the facts available to the officers at the time they interacted with Daniel Landeros. *Graham v. Connor, 490 U.S. 386 (1989).* Prior to encountering Mr. Landeros at the collision scene, no Elk Grove police officer had any prior knowledge of him, his background or his activities prior to receiving 911 calls and observing his actions at the scene. While Plaintiffs (i.e. wife and five children) certainly observed decedent's bizarre behavior prior to the collision, none of the Defendant officers were aware of this or considered it when determining how to contact him or take him into custody. As such, none of the Plaintiffs have any evidence which would be relevant to the jury's determination of whether any of the Defendant officers acted reasonably or even negligently. *F.R.E. 402.*

Having deposed Plaintiffs, it is anticipated that a grieving wife and five children will provide extensive, emotional testimony regarding the loving relationship they had with decedent. While this testimony would undoubtedly be relevant to any issue of damages, such highly emotional testimony has absolutely nothing to do with any questions of potential liability. On the contrary, such emotional testimony will inescapably pull at the heartstrings of jurors such that their verdict would improperly be based on sympathy rather than evidence. *F.R.E.*

*///*

*403*. Given that this is a wrongful death case, the jury will in fact be instructed that they must not base their verdict on "sympathy". [Model Instruction 1.2]

Moreover, a trial on liability issues will be limited to testimony of only the involved officers, the forensic pathologist and opposing expert witnesses, likely entailing only 3-4 days (i.e. one trial week). Adding the testimony of decedent's wife plus five children will not only minimally increase trial by at least another full day or more (i.e. into a second week), but would involve extensive testimony regarding decedent's income and personal background. While all of this additional testimony would certainly be relevant to damages in the event of a Plaintiffs' verdict, none of it would be necessary if the jury concludes that there is no liability. All Plaintiffs of course have the absolute right to be present during trial and introduced to the jury – it's just that their testimony, if at all, should be limited to damages.

As with any request to bifurcate liability from damages, this would understandably preclude Defendants from introducing evidence of decedent's prior criminal history (including prison terms), his pending bankruptcy or even his less than perfect role as a husband/father during any liability phase (issues Plaintiffs would undoubtedly prefer to avoid). On the other hand, withholding such evidence from the jury during any liability phase would appropriately limit the jury to determining liability based solely on the evidence available to the officers at the time and relevant to decedent's actual cause of death without burdening them with balancing decedent's character.

*F.R.Civ.P., Rule 42(b)* permits the Court to bifurcate a trial "to avoid prejudice or to expedite or economize." As noted above, bifurcating liability from damages would achieve both goals by avoiding undue prejudice to Defendants inherent in irrelevant emotional testimony and reducing trial time to a single week rather than extending into a second week. Bifurcation of trial of liability and damage issues is well within the scope of the trial court's discretion. *DeAnda v.*

*Long Beach, 7 F3d 1418, 1421 (9th Cir. 1993)*. For all of the aforementioned reasons, Defendants respectfully request that the Court bifurcate trial into two phases – liability to be followed, if necessary, by a second damage phase.

**B. DEFENDANTS PRESERVE QUALIFIED IMMUNITY AND REQUEST SPECIAL INTERROGATORIES.**

Pursuant to the Court's final Pretrial Conference Order, Defendants have separately briefed the issue of preserving qualified immunity contingent of specific factual determinations by the jury. [See: Limine Motion No. , under separate cover] *Morales v. Fry, 873 F3d 817, 823-24 (9th Cir. 2017)*. Correspondingly, Defendants will be requesting special interrogatories for submission to the jury for determination of currently disputed factual issues necessary for the Court's determination of qualified immunity in the unlikely event of an adverse verdict. *Lam v. San Jose, 869 F3d 1077, 1085 (9th Cir. 2017)*.

In the unlikely event that a jury somehow concludes that any of the involved officers violated a constitutional right, such a finding would not preclude the application of the officers' defense of qualified immunity if the right was not "clearly established" at the time. *Norwood v. Vance, 591 F3d 1062 (9th Cir. 2010)*. In light of the Supreme Court's increasing mandate to apply qualified immunity to the specific facts of each case [e.g. *White v. Pauly, 137 S.Ct. 548 (2017); Kisela v. Hughes, 138 S.Ct. 1148 (2018)* and, more recently again in *City of Escondido v. Emmons, 139 S.Ct. 500 (2019)*], Defendants respectfully submit that the individual Defendant officers must be permitted to submit special interrogatories to the jury in order to allow them to answer the material facts currently precluding the Court from granting qualified immunity. Then and only then can a determination be properly made as to whether any officer(s) may have violated a "clearly established" right under these particular circumstances.

///

///

Without factual determinations of those issues outlined in Defendants' separate motion, individual officers would be improperly deprived of their essential privilege of qualified immunity.

### C. <u>ONLY A FEW EVIDENTIARY ISSUES NEED TO BE ADDRESSED BY *LIMINE* MOTIONS.</u>

Because of the longstanding history of cooperation between trial counsel, it would appear that there will be minimal *limine* motions. Quite frankly, it would appear that Plaintiffs' only *limine* motion(s) may seek to exclude extensive evidence concerning decedent's prior criminal history, gang affiliation, tattoos and prior drug abuse. Ironically, Defendants would stipulate to excluding all of these issues from phase one of trial if the Court bifurcates trial into a liability stage followed, if necessary, by a damage phase.

As noted above, Defendants' only *limine* motions will address bifurcation and limitations on the testimony of Plaintiffs' designated police practices expert, Roger Clark. [See: motions under separate cover]

### D. <u>SENSITIVE JURY VOIR DIRE ISSUES.</u>

Although having few, if any, factual parallels to the George Floyd case in Minneapolis, both cases allege that in individual in police custody was killed by officers as a result of "asphyxia". Given the widespread protests and publicity surrounding the Floyd (and other) case(s), Defendants respectfully submit that these issues must be thoroughly vetted during voir dire in order to empanel a truly impartial jury.

### E. <u>SPECIFIC CLAIMS.</u>

Although Defendants believe that the legal issues have been adequately set forth in the Pretrial Conference Order, they are set forth below for the Court's convenience. Given the overlapping nature of many of the legal theories, it is anticipated that some issues may be consolidated, dismissed or otherwise modified by way of jury instructions, special verdict form or otherwise during trial.

**Claim 1**: **Excessive Force (Survival Claim, Fourth Amendment).**

Based on the totality of the circumstances presented to the involved officers at the time (i.e. restraining a resisting felony hit & run suspect), Defendants contend that the minimal force applied was objectively reasonable. *Graham v. Connor*, 490 U.S. 386 (1989); Ninth Circuit Model Instruction 9.25 (2017). Depending on the jury's determination of material issues of fact, Defendants will preserve the defense of qualified immunity, if necessary. *White v. Pauly*, 137 S.Ct. 548 (2017)

**Claim 2: Violation of the Bane Act (Cal. Civ. Code § 52.1).**

Although all Plaintiffs seem to seek duplicate recovery under California's so-called Bane Act, the Ninth Circuit has determined that prevailing on such a claim requires Plaintiffs to prove that the officer had "a specific intent to violate the decedent's rights." *Reese v. Cty. of Sacramento*, 888 F3d 1030, 1043 (9thCir. 2018). Defendants will also similarly dispute the scope of Plaintiffs' claims for damages as well as a redundant claim for attorneys' fees.

**Claim 3: Negligence (Wrongful Death Claim, State Law).**

As with all "negligence" claims involving conduct of police officers, it will be necessary to modify "standard" CACI jury instructions and Defendants will be submitting a version of this instruction approved by this Court in previous matters. Defendants will also be submitting instructions regarding the comparative negligence of decedent.

**Claim 4: Battery (Wrongful Death Claim, State Law).**

Although the standard is essentially the same under the 4th Amendment and battery, Defendants will submit a version of CACI Jury Instruction 1305 (2019) to separately instruct the jury on this claim. Defendants also dispute the scope of Plaintiffs' damage claims and any right to recover attorneys' fees under this cause of action. However, with respect to the vicarious liability of the City of Elk

Grove, Defendants propose that the parties stipulate to such a finding outside the presence of the jury so as to avoid confusion as to the Defendant parties.

**Claim 5**: **Municipal Liability – Ratification.**

Defendants agree that the City of Elk Grove found that the actions of the officers were reasonable and within policy and submit that Plaintiffs may only prevail on this claim in the unlikely event that the jury concludes otherwise.

**Claim 6**: **Municipal Liability – Failure to Train and/or Supervise.**

As with all so-called *Monell* claims, Defendants not only submit that all training was reasonable, appropriate and within standards, but further submit that the Plaintiffs cannot meet the substantially heightened burden of proof necessary to establish that such training was "deliberately indifferent" to Decedent's constitutional rights. Given that a separate finding on any or all *Monell* claims rarely, if ever, impacts the measure of damages in the event of a Plaintiffs' verdict, Defendants will propose to Plaintiffs that the City will be liable for individual damages so as to narrow the number of claims and minimize overwhelming the jury with potentially confusing jury instructions incorporating different standards.

**Claim 7**: **Substantive Due Process – Loss of Family Relationship**

Similar to issues arising with *Monell* claims, Defendants submit that Plaintiffs will be unable to even meet their burden of proving that the actions of the officers were "unreasonable", much less meeting the heightened standard of "deliberate indifference" required to prove this Fourteenth Amendment claim. As such, Defendants will continue to urge Plaintiffs to proceed solely on the Fourth Amendment claim so as to minimize the number of redundant claims and potentially confusing jury instructions.

/ / /

/ / /

/ / /

/ / /

**5. CONCLUSION.**

With the exception of determining the issue of bifurcation and few *limine* issues, Defendants look forward to an efficient and interesting trial.

DATED: October 22, 2020

FERGUSON, PRAET & SHERMAN
A Professional Corporation

By: /s/ Bruce D. Praet
Bruce D. Praet,
Attorney for Defendants