LAW OFFICE OF DALE K. GALIPO
DALE K. GALIPO, SBN 144074
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333

LAW OFFICE OF STEWART KATZ
STEWART KATZ, SBN 127425
555 University Avenue, Suite 270
Sacramento, California 95825
Telephone: (916) 444-5678

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER LANDEROS, et al., | Case No. 2:17-cv-02598-KJM-CKD |
| Plaintiffs, | *Honorable Kimberly J. Mueller* |
| v. | **PLAINTIFF'S TRIAL BRIEF ON BIFURCATION** |
| SAMUEL SCHAFER; et al., | |
| Defendants. | |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Plaintiffs Jennifer Landeros, individually and as successor in interest to Daniel Landeros, Deceased; Deja Landeros, individually and as successor in interest to Danie Landeros, Deceased; B.M.L., individually and as successors in interest to Daniel Landeros, Deceased, by and through Jennifer Landeros, as Guardian ad Litem; J.J.L., individually and as successor in interest to Daniel Landeros, Deceased, by and through Jennifer Landeros, as Guardian ad Litem; D.F.L., individually and as successor in interest to Daniel Landeros, Deceased, by and through Jennifer Landeros, as Guardian ad Litem; and T.D.L., individually and as successor in interest to Daniel Landeros, Deceased, by and through Jennifer Landeros, as Guardian ad Litem, (collectively "Plaintiffs"), by and through their counsel of record, hereby submit the following Trial Brief on the issue of Bifurcation pursuant to Federal Rule of Civil Procedure 16, Local Rule 286, and the Order of this court.

## I.  PREFATORY STATEMENT.

Pursuant to the Court's Final Pretrial Conference Order [Doc. 36, p. 17], Plaintiffs provide the following brief on the issue of bifurcation now that the Court has set trial for May 10, 2022. [Doc. 61]. Plaintiffs contend that Bifurcation of liability and damages would be inappropriate, foster delay, confusion, and inconvenience. Counsel for the parties have met and conferred on this issue with the following results:

- Plaintiffs respectfully request that the trial is not bifurcated into two phases (liability, followed by damages, if needed). Defendants request that trial proceed with bifurcation.
- The parties have now stipulated, and the Court has approved, that the trial on this matter be extended to 5-7 days. Plaintiffs respectfully

submit this is ample time to complete a full trial inclusive of liability and damages, given the extensive trial experience of all counsel.

## II. STATEMENT OF FACTS

This case arises out of Elk Grove Police Department officers' detainment and use of force against Decedent Daniel Landeros on November 30, 2016, near Elk Grove Boulevard in the City of Elk Grove, which resulted in his death.

The Plaintiffs in this case are Decedent's wife, Jennifer Landeros; Decedent's daughter, Deja Landeros; Decedent's daughter, B.M.L., Decedent's son, T.D.L.; Decedent's son, D.F.L.; and Decedent's son, J.J.L. Plaintiffs contend that defendant Officers Samuel Schafer, Steven Holstad, Daniel Coleman, Justin Parker, Patrick Scott, and Jeremy Banks used excessive and unreasonable force against Decedent, causing his death. Plaintiffs also contend that Defendant Officers were negligent in their tactical conduct and decisions and their use of force. Plaintiffs are seeking damages as permitted by law

On November 30, 2016 at approximately 9:57 p.m., officers of the Elk Grove Police Department received a dispatch call via radio regarding a reckless vehicle running red lights and swerving. The vehicle was described as an older white pickup truck with an unknown license plate, last seen traveling westbound on Laguna Boulevard from Bruceville Road. Approximately one minute later, an Elk Grove police officer voiced over the radio that a white truck was spotted going eastbound on a westbound lane on Elk Grove Boulevard. This truck was later determined to have been driven by Daniel Landeros ("Decedent").

Officers Steve Holstad and Samuel Schafer were traveling westbound on Elk Grove Boulevard when they heard the radio communication regarding a white truck on Elk Grove. As they continued westbound, they came upon an accident scene with multiple vehicles involved, including a white truck. As bother officers exited the patrol vehicle, they observed Decedent walking on the center media with a laceration to his face and blood coming from his face and head. Officer Holstad

-2-    2:17-cv-02598-KJM-CKD
PLAINTIFFS' TRIAL BRIEF RE: BIFURCATION

1  attempted to make contact with Decedent but Decedent ran away from him. The
2  officers' contact with Decedent was captured by their body worn cameras. While
3  running, Decedent expressed his belief that the officers were fake. Officer Schafer
4  than deployed his TASER at Decedent as the Decedent continued to run while
5  expressing his belief that the officers were fake. At some point, Decedent slowed
6  down and Officer Schafer deployed his TASER a second time at Decedent, this time
7  hitting Decedent and causing Decedent to tense up and fall to the ground onto his
8  back.

9  Officers Schafer and Holstad then approached Decedent, turned him onto his
10 stomach, and handcuffed him behind his back. The officers placed their knees on
11 Decedent's shoulders and thigh while Decedent repeatedly asked the officers to let
12 him up. Decedent can be heard groaning and breathing heavily on the videos.
13 Officers Jeremey Banks and Patrick Scott then arrived on scene. Officers Banks
14 took a position on Decedent's right side and placed his knee on Decedent's right
15 shoulder while holding Decedent's head down with both hands while Officer Scott
16 took control of Decedent's feet and legs, applying a figure-four leg lock and then
17 subsequently crossing Decedent's legs and forcing his feet and legs into his
18 buttocks, placing the weight of all four officers on Decedent's chest and stomach
19 while the officers double-locked Decedent's handcuffs. During his initial interview
20 with Elk Grove detectives after the incident, Officer Schafer estimated that there
21 was 900 pounds of weight placed on Decedent (the total weight of the four officers).
22 Approximately three minutes after Officers Schafer and Holstad placed Decedent on
23 his stomach, Decedent made his last audible sound and stopped moving.

24 Officers Justin Parker and Daniel Coleman subsequently arrived on scene.
25 Although Decedent was no longer moving, Officer Banks requested a WRAP (leg
26 restraint) to be applied to Decedent. At this point, Decedent can be seen on Officer
27 Holstad's body worn camera recording with his face positioned directly against the
28 ground. Officers Schafer and Holstad then switched places with Officer Parker and

1  Officer Jeff Evans. Once the officers arrived with the WRAP< Officer Banks finally
2  noticed that Decedent's face was pressed directly against the ground and asked
3  Decedent whether he was still good. Another officer can be heard saying, "Hey, get
4  him off his nose, dude," after which Officer Coleman stated that Decedent was
5  turning blue. The officers finally placed Decedent onto his side and attempted to
6  elicit a response form him by tapping him on his leg and attempting a sternum rub.
7  One of the officers then started CPR on Decedent while Officer Scott placed a
8  breathing mask on him. None of the officers nor responding fire department
9  personnel were able to revive Decedent. Decedent's autopsy report noted multiple
10 findings consistent with death caused by the officers' actions that ultimately
11 prevented Decedent from being able to breathe. These included the manner of
12 restraint, the use of the TASER, and blunt force injuries. Decedent was
13 approximately 5'6 in height and weighed 205 pounds at the time of his death.

   Throughout the incident, the Defendant Officers did not have any information
that Decedent had a weapon on him or observed anything on Decedent's person that
they believed to be a weapon. Throughout the incident, Decedent never verbally
threatened anyone. Moreover, Decedent never attempted to attack anyone during the
encounter.

   The parties have not stipulated or admitted to any other facts outside the
undisputed facts listed in the Final Pretrial Conference Order.

### III.   THIS CASE IS NOT WELL-SITUATED FOR BIFURCATION

   "In determining whether bifurcation of damages is appropriate, bifurcation 'is
the exception rather than the rule of normal trial procedure' within the Ninth
Circuit." *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 105 F. Supp. 3d
1184, 1208 (D. Or. 2015) (quoting *Clark v. I.R.S.*, 772 F.Supp.2d 1265, 1269 (D.
Hawai'i 2009)). Federal Rule of Civil Procedure 42(b), which authorizes the district
court to conduct separate trials, provides that

> [t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials would be conducive to exp edition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment of the Constitution or as given by Statute to the United States.

"A defendant seeking bifurcation has the burden of presenting evidence that a separate trial is proper in light of the general principles that a single trial tends to lessen the delay, expense and inconvenience to all parties. *McCrae v. Pittsburgh Corning Corp.*, 97 F.R.D. 490, 492 (D.C. Pa. 1983). Generally, "the presumption is that all claims in a case will be resolved in a single trial, and 'it is only in exceptional circumstances where there are special and persuasive reasons for departing from this practice that distinct causes of action asserted in the same case may be made the subject of separate trials.'" *Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 549 (S.D.N.Y. 2005) (quoting *Miller v. Am Bonding Co.*, 257 U.S. 304, 307 (1921)). The decision whether to bifurcate a trial lies within the sound discretion of the trial court. *Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 998 (9th Cir. 2001). The court must consider "potential prejudice to the parties, potential confusion to the jury, and the relative convenience and economy which would result." *Green v. Baca,* 226 F.R.D. 624, 630 (C.D. Cal. 2005) (quoting *Cravens v. County of Wood, Ohio*, 856 F.2d 753, 755 (6th Cir. 1988)). "A decision ordering bifurcation is dependent on the facts and circumstances of each case." *Green*, 226 F.R.D. at 630 (quoting *Saxion v. Titan-C-Manufacturing*, 86 F.3d 553, 556 (6th Cir. 1996)).

//
//
//
//

### A. Defendants Have Not Met Their Burden of Demonstrating How Convenience and Judicial Economy Would Be Benefitted by Bifurcation.

Defendants, as the moving party, bear the burden of demonstrating why bifurcation of the action is appropriate. *Dallas v. Goldberg*, 143 F. Supp. 2d. 312, 315 (S.D.N.Y. 2001); *DeVito v. Barrant*, 2005 WL 2033722 at 11 (E.D.N.Y. 2005). Generalized assertions will not suffice. Defendants must make a detailed offer of proof which indicates the need for bifurcation. *Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 293 (2d Cir. 1990). Defendants' trial brief offers no such details. Accordingly, Defendants' trial brief does not satisfy Defendants' burden of demonstrating that conducting two separate trials of Plaintiffs' claims would be more expedient or economical, or would avoid undue prejudice.

### B. The Nature and Extent of Decedent's Injuries and Damages are Necessary to Establish Liability.

In a civil rights case claiming excessive force, bifurcation of liability and damages is inappropriate when evidence of the plaintiff's injuries is relevant in establishing that the officer used excessive force. *See Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997) (holding that bifurcation of liability and damages and limiting medical proof probative of liability in a civil rights excessive force case was an abuse of discretion "because the extent of plaintiff's damages was relevant to the question of liability."); *Scott v. City of Pasadena*, Case No. CV 07-07856 MMM (AJWx), 2014 WL 12806259, at *7 (C.D. Cal. Feb. 6, 2014) (denying request to bifurcate liability and damages because the nature of plaintiff's injuries gives rise to inference of when the force was used and could prove liability of excessive force). Bifurcation of liability and damages would be inappropriate in this case because the witnesses and evidence on the issues of liability and damages are inextricably intertwined. Bifurcation would result in prejudice to the Plaintiffs, substantially increased costs, duplicative presentation of evidence and testimony at multiple trials, needless complication, and the wasteful utilization of jury time for separate trials.

*See Wiggins v. Penske Logistics, LLC*, No. EDCV192260DMGKKX, 2022 WL 1161628, at *2 (C.D. Cal. Mar. 17, 2022) (denying bifurcation of liability from damages because the issues were not particularly complex such that it could cause jury confusion, the issues of damages and liability were potentially intertwined and would require some witnesses to testify at both trials, and the difficulty of line-drawing questions on which evidence goes to which phase of trial all weigh against bifurcation).

Defendants contend that the defendant officers did not use excessive force and that Decedent died of drug intoxication, not restraint asphyxia as a result of the officers' uses of force. Plaintiffs contend that Decedent died of restraint asphyxia as a result of the defendant officers' use of excessive force in exerting significant pressure on a prone-restrained Decedent's back and torso, thereby interfering with his ability to breathe. The medical evidence in this case, supports both liability and damages. The evidence to support Plaintiffs' contentions of liability include the audio and video recordings of the incident, officer statements and depositions, as well as the medical evidence of injuries sustained by Decedent and medical tests performed on Decedent. Plaintiffs' forensic pathology expert is expected to testify that evidence of the blunt force injuries and petechial hemorrhages noted in Decedent's autopsy and evidence of Decedent being in pulseless electrical activity (PEA) when a cardiogram was taken by paramedics at the incident, in conjunction with the audio and video recordings and officer statements support a finding that Decedent died as a result of restraint asphyxia. The medical evidence will also be presented support Plaintiffs' claim of survival damages for Decedent's pain and suffering and loss of life. Because evidence of Decedent's injuries and medical records are directly probative to both liability and damages, bifurcation of liability from damages would severely prejudice Plaintiffs.

//
//

### C. Bifurcating Liability from Damages Will Cause Plaintiffs Undue Burden Due to Limited Availability of Expert Witnesses

Additionally, bifurcating liability from compensatory damages will adversely affect Plaintiffs' ability to make their forensic pathologist expert available to testify for the damages phase. The unpredictability of jury deliberations for the liability phase would make it difficult for Plaintiffs to schedule expert testimony in advance or call back expert witnesses to testify in a second phase for damages due to expert witnesses' busy schedules. This may result in a delay to the start of a compensatory damages phase or a prolonged compensatory damages phase to accommodate expert witnesses' schedules. Delaying the presentation of evidence for a compensatory damages phase or presenting a piecemeal case for damages will introduce multiple avenues of potential prejudice to Plaintiffs, which includes mounting attorneys' fees, juror's memories of the issues and evidence diminishing, and the time value of the delay in terms of Plaintiffs' delayed remedies.

### D. Defendants Will Not Suffer Undue Prejudice from Trying Liability and Damages Together

Defendants will not suffer any prejudice if the Court does not bifurcate liability from compensatory damages. Plaintiffs do not anticipate on introducing damages testimony as extensive as Defendants argue. Plaintiffs anticipate that testimony regarding damages will last at most, one and a half days (but more likely one day), and does not believe that a jury will be unable to distinguish evidence of liability from evidence pertaining to measure of damages. *See Hamm v. American Home Product Corp.* (E.D. Cal. 1995) 888 F. Supp. 1037, 1039 ("the court is not persuaded that the jury in this case will be unable or unwilling to distinguish between evidence pertaining to liability or culpability and evidence pertaining to the measure of damages. The experience of this court does not support such a dark view of juror competence.").

Plaintiffs further contend that having the "sympathetic" Plaintiffs testify at trial will not cause Defendants undue prejudice as their testimony is "not so

exceptionally inflammatory…to justify preventing the jury from making a single determination regarding Defendants' liability and, if Defendants are liable, [Plaintiffs'] damages. *Wiggins*, No2022 WL 1161628, at *2 (denying bifurcation of liability from damages despite the case involving "tragic facts and a gory accident" because other factors "outweigh any risk that evidence regarding the decedent's injuries and Plaintiff's emotional distress will provoke excess sympathy toward Plaintiff"). Further, jury instruction 1.2 of the Ninth Circuit Manual of Model Civil Jury Instructions specifically instructs that juror "must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy" and that they "must decide the case solely on the evidence before" them. Courts generally presume that a jury follows the instructions given to it. *Weeks v. Angleone*, 528 U.S. 225, 234 (2000). Further any specific prejudice can be cured by an appropriate limiting instruction. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1028 (9th Cir. 2015); *see Dubria v. Smith*, 224 F.3d 995, 1002 (9th Cir. 2000) ("[C]autionary instruction[s] [are] presumed to have cured prejudicial impact.").

Lastly, bifurcation of liability and damages will do nothing to cure Defendants' concern that Plaintiffs' testimony regarding financial and emotional losses may emphasize the potential for a "deep pocket" award for damages. Even if the trial was bifurcated, this testimony would still come out during the damages phase and would still present a potential for a "deep pocket" damages award. And, as Defendants concede, there is no way to eliminate the potential for a "deep pocket" award.

### E. Judicial Economy Will Best Be Served by Having Liability and Damages Tried Together

Defendants estimate, and Plaintiffs agree, that testimony on damages will last at most a little over one day (but Plaintiff believes that it is more likely to last only one day). Such a short extension of the trial weighs against bifurcation. *See Wiggins*, 2022 WL 1161628, at *2 (concluding that bifurcation of liability from damages

1 would not promote judicial efficiency despite the approximation that liability would
2 make up one third of the trial days while damages would make up two thirds
3 because the rations were not so far out of proportion as to warrant bifurcation).
4 Additionally, a significant portion of the testimony on damages is relevant to the
5 issue of liability and therefore a bifurcation of the two phases would not promote
6 efficiency and judicial economy. *See Matsushita Elec. Indus. Co., Ltd. v. CMC*
7 *Magnestics Corp.* (N.D. Cal. Jan. 29, 2007) No. C 06-04538 WHA, 2007 WL
8 219779, at *2 ("Overlap in evidence as between the two claims may militate in
9 favor of one slightly longer trial rather than two long trials). Moreover, although the
10 possibility that defendant officers will not be found liable could result in a slightly
11 shorter trial if the Court were the bifurcate liability from damages, bifurcation could
12 also result in a longer trial due to the possibility that defendant officers are found
13 liable because it would require the parties to present duplicative evidence and
14 testimony in the damages phase of trial, s*ee Scott*, 2014 WL 12806259, at *8
15 (rejecting the argument that bifurcation of liability from damages would promote
16 judicial economy because the possibility that plaintiff wins on liability in a
17 bifurcated trial would result in a longer trial with duplicative evidence and testimony
18 introduced in the damages phase), and the uncertainty of *when* the damages phase of
19 trial can start to accommodate expert witness availability. Thus, the interests of
20 judicial economy would be best served by trying liability and damages together.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court decline to bifurcate trial into a liability phase and a damages phase.

//
//
//
//
//
//

Respectfully submitted,

DATED: April 26, 2022            **LAW OFFICES OF DALE K. GALIPO**
                                 **LAW OFFICE OF STEWART KATZ**


                                 By      */s/ Dale K. Galipo*
                                     Dale K. Galipo
                                     Stewart Katz
                                     *Attorneys for Plaintiffs*