LAW OFFICE OF DALE K. GALIPO
DALE K. GALIPO, SBN 144074
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone: (818) 347-3333

LAW OFFICE OF STEWART KATZ
STEWART KATZ, SBN 127425
555 University Avenue, Suite 270
Sacramento, California 95825
Telephone: (916) 444-5678

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER LANDEROS, et al., | Case No. 2:17-cv-02598-WBS-CKD |
| Plaintiffs, | |
| v. | **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR NEW TRIAL** |
| SAMUEL SCHAFER, et al., | |
| Defendants. | Date: October 31, 2022<br>Time: 1:30 p.m.<br>Courtroom: 5 (14th Floor)<br>Judge: Hon. William B. Shubb |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

STATEMENT OF ADDITIONAL FACTS ........................................................................... 1

ARGUMENT ........................................................................................................................... 4

    A.    The verdict is based upon false evidence ................................................. 4

    B.    The falsity of Dr. Tovar's "independence" is newly discovered evidence ....................................................................................................... 6

    C.    Defendants' failure to disclose Dr. Tovar constitutes discovery misconduct and deception .......................................................................... 9

REQUEST FOR SUBPOENA TO DR. TOVAR ................................................................ 10

CONCLUSION ...................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Axelson v. Hartford Ins. Co.*,
    2013 WL 1261757 (D. Nev. Mar. 26, 2013) ............................................................ 7

*Hayes v. Brown*,
    399 F.3d 972 (9th Cir. 2005) (en banc) ..................................................... 6, 8, 10

*Hesselbein v. Beckham*,
    168 F. Supp. 3d 1252 (E.D. Cal. 2016) ................................................................ 4, 6

*In re DePuy Orthopaedics, Inc.*,
    888 F.3d 753 (5th Cir. 2018) ................................................................................ 8–9

*Jones v. Aero/Chem Corp.*,
    921 F.2d 875 (9th Cir. 1990) (per curiam) ........................................................... 6, 9

*Jordan v. Maxfield & Oberton Holdings*,
    977 F.3d 412 (5th Cir. 2020) .................................................................................... 8

*Lustiger v. United States*,
    386 F.2d 132 (9th Cir. 1967) .................................................................................... 5

*Mooney v. Holohan*,
    294 U.S. 103 (1935) .................................................................................................. 6

*Napue v. Illinois*,
    360 U.S. 264 (1959) .................................................................................................. 8

*Rios v. United States*,
    2019 WL 5228704 (S.D. Tex. Aug. 12, 2019),
    *report and recommendation adopted*,
    2019 WL 5225452 (S.D. Tex. Sept. 13, 2019) ........................................................ 5

*Smith v. Allen*,
    212 F. Supp. 713 (E.D. Va. 1962) ............................................................................ 7

*Tenet Healthsystem Desert, Inc. v. Blue Cross of California*,
    245 Cal. App. 4th 821 (2016) .................................................................................. 5

*United States v. Freeman*,
    650 F.3d 673 (7th Cir. 2011) .................................................................................... 6

*United States v. Houston*,
    648 F.3d 806 (9th Cir. 2011) .................................................................................... 6

*United States v. Wallach*,
    935 F.2d 445 (2d Cir. 1991) ..................................................................................... 6

*United States v. Woods*,
    335 F.3d 993 (9th Cir. 2003) .................................................................................... 5

**Statutes and Court Rules**

18 U.S.C. § 1341 ............................................................................................................. 5

18 U.S.C. § 1343 ............................................................................................................. 5

Cal. Civ. Code § 1710 ..................................................................................................... 5

Fed. R. Civ. P. 59 ............................................................................................................ 1

L.R. 230 ......................................................................................................................... 10

**Other Authority**

*Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit* §§ 15.32 and 15.35 (2022 ed.), https://bit.ly/3BqRDoZ ............................... 5

> "Curiouser and curiouser!" cried Alice (she was so much surprised, that for the moment she quite forgot how to speak good English) . . . .
>
> — *Alice's Adventures in Wonderland*, Chapter II

## INTRODUCTION

On September 1, 2022, Plaintiffs timely moved for a new trial pursuant to Rule 59(a)(1)(A). As Plaintiffs showed in their supporting brief and evidence, a new trial is warranted for three independent reasons having their common source in Defendants' deception of the Court and the jury regarding the "independence" of Dr. Jason Tovar: (1) a verdict based on false evidence; (2) newly discovered evidence; and (3) discovery misconduct. *See generally* ECF 130-1 ("Motion").

Defendants' September 12 opposition to the motion, *see generally* ECF 134 ("Opposition") — and especially the double hearsay-containing declaration of Defendants' counsel Bruce Praet — do nothing to detract from Plaintiffs' showing. To the contrary, as elaborated herein, the opposition and Mr. Praet's supporting declaration actually *confirm the falsity* of Dr. Tovar's testimony and serve to highlight the impropriety of counsel's consistent vouching of that false testimony to the jury from first to last. That deception irredeemably tainted the verdict, and the Court should grant a new trial to prevent a miscarriage of justice.

## STATEMENT OF ADDITIONAL FACTS

The essence of Defendants' opposition is the notion that "Plaintiffs have not and cannot cite to a single instance of false evidence presented by Dr. Tovar." Opposition at 1:27–28. That notion is premised in turn on two asserted facts:

- "Dr. Tovar *honestly* considered himself independent and impartial"; and
- "Dr. Tovar is *not affiliated* with either the defense or plaintiffs in this case."

*Id.* at 2:3–6 (emphasis added) (citing Appendix at 37). But as documented in this section, neither of these "facts" withstands scrutiny.[1]

---

[1] "Appendix" stands for Plaintiffs' Appendix of Evidence in Support of Their Motion for New Trial (Doc. 130-2, filed Sept. 1, 2022). Analogously, "Supplemental Appendix" stands for Plaintiffs' Supplemental Appendix of Evidence in Support of Their Motion for New Trial, filed concurrently herewith. The Supplemental Appendix is paginated consecutively in the upper-right corner of the page from Page 1 to Page 59.

*First*, it is indeed true that Dr. Tovar testified, in response to Mr. Praet's leading question, that he considered himself independent and impartial:

> Q. Do you consider yourself independent and impartial?
>
> A. Yes, absolutely.

Appendix at 37:3–4. But whether Dr. Tovar testified *honestly* — whether he *honestly* considered himself independent and impartial — is the very question to be answered, not the conclusion to be assumed. One naturally expected to see a declaration from Dr. Tovar himself, both affirming the truthfulness of his testimony and explaining why it is true in the face of the voluminous contradictory evidence presented in the motion (pp. 4–5) and supplemented below. *But Dr. Tovar submitted no declaration.* Rather, the Court has only the unsworn assertion by Defendants' counsel attesting to another person's honesty. That is not competent evidence.

*Second*, for Defendants' counsel to assert yet again that "Dr. Tovar is not affiliated with . . . the defense" in this case is to continue to deceive the Court. The essential, undeniable fact is that Defendants' counsel *paid Dr. Tovar at least $4,000.00 to prepare and give his trial testimony*, as reflected on "Invoice #123" from "Jason Tovar's Company" to "Bruce D. Praet." Appendix at 93, *reproduced in part in* Motion at 5. As reflected at the bottom of the invoice (not reproduced in the body of the motion): "It was a pleasure [for Dr. Tovar] to *assist with this matter*. Thank you for your *business*." *Id.* (emphasis added).

What was the assistance? By Dr. Tovar's own account, he spent an *entire hour* in "Phone Communication with Mr. Praet" about his testimony, and he then spent an *additional four hours* in "Review of Material and Trial Preparation." *Id.* Mr. Praet confirms that Dr. Tovar did spend a "combined one hour of conversation with defense counsel," and that their (multiple) conversations included jointly "reviewing Dr. Tovar's original report" and determining whether Dr. Tovar "should receive reports from designated experts for either or both sides." Opposition at 4:2–8. Specifically, in their first conversation, Dr. Tovar "pulled his original file and *confirmed his findings* during our perhaps 30 minute conversation," *id.* at 9:26–27, ¶ 5; and in a subsequent conversation, Mr. Praet "inform[ed] him that it was important that he rely solely upon his own observations and findings in order to maintain his impartiality," *id.* at 10:16–17, ¶ 7.

1    These are precisely the kinds of conversations that lawyers have with their *retained experts*!
2    Moreover, though Dr. Tovar testified for less than <u>1.4</u> hours, *see* Supplemental Appendix at 22–23
3    (minute order documenting his testimony from 10:42 a.m. to 12:02 p.m.), he invoiced Defendants'
4    counsel for <u>4.0</u> hours of testimony, *see* Appendix at 93 — precisely the kind of "minimum" often
5    charged by *retained experts*. In a word, and manifestly contrary to Mr. Praet's opening statement
6    to the jury, Dr. Tovar was "hired" by Defendants. *See* Appendix at 31:3 (emphasizing to the jury
7    that Dr. Tovar "hasn't been hired by either side"). In another word, and again manifestly contrary
8    to Mr. Praet's leading question, Dr. Tovar was "affiliated" with Defendants under any reasonable
9    meaning of that word. *See id.* at 37:5–7 ("Q. You're not affiliated with the defense or the plaintiffs
10   in this case, correct? A. Absolutely. Correct."). In sum, no reasonable person with knowledge of
11   the facts that have come to light after trial would conclude that Dr. Tovar was "independent," *id.*
12   at 31:12, let alone "completely independent," *id.* at 59:18.

13   Finally, given the multiple and substantive conversations between Dr. Tovar and Mr. Praet
14   as part of their "business" relationship, it was at least *deceptive* for Mr. Praet to elicit the following
15   testimony from Dr. Tovar: "Q. You and I met for the first time out in the hallway this morning?
16   A. Yes." Appendix at 35:18–20. But in fact, the elicited testimony was *categorically false*: the
17   two men certainly "met" (under any reasonable meaning of that word) when Mr. Praet examined
18   Dr. Tovar at a live deposition just a few years ago:

```
22   EXAMINATION BY MR. PRAET:
23          Q.  Dr. Tovar, I introduced myself briefly.  I'm
24   Bruce Praet.  I represent the South Lake Tahoe Police
25   Department, the defendants in this matter.
```

23   Supplemental Appendix at 33 (transcript of December 18, 2018 deposition of Dr. Tovar in *Ainley*
24   *v. City of South Lake Tahoe*, No. 2:16-cv-00049-TLN-CKD (E.D. Cal.)). Mr. Praet's examination
25   of Dr. Tovar at that deposition consumed twenty-four pages in the transcript — no brief exchange
26   that could possibly be forgotten by *both* men. *See id.* at 33–57.
27   Defendants' supposed rebuttal to this mountain of evidence is to assert that they were calling
28   Dr. Tovar strictly as a "percipient" witness and were merely paying him a "reasonable appearance

1  fee" for his "personal time." Opposition at 6:26, 10:1–8, ¶ 6. In the first place, we have already
2  demonstrated that it is part of Dr. Tovar's official job description to "Testify clearly and concisely
3  at public hearings, [in] *courts of law*, and before the Grand Jury in a professional, neutral, and con-
4  vincing manner." Appendix at 98 (emphasis added). Defendants' asserted evidence to the contrary
5  — that Dr. Tovar "is required to testify in criminal cases" only — is based on rank hearsay. That
6  is, Mr. Praet declares that "*Dr. Tovar informed me* that . . . he is required to testify in criminal cases"
7  only. Opposition at 10:2–3, ¶ 6 (emphasis added). Indeed, the declaration is *double* hearsay, as
8  Mr. Praet is reporting what Dr. Tovar purportedly stated to Mr. Praet regarding what the County
9  of Sacramento purportedly stated to Dr. Tovar. That is not competent evidence.

10  Even taking Mr. Praet's hearsay at face value does not help Defendants. The declaration
11  states: "If Dr. Tovar appears in a civil matter while on-duty, his fees are paid directly to the County
12  at a rate of $365/hour. Alternatively, Dr. Tovar informed me that he has the option to appear in
13  civil matters on his own personal time at a rate of $400/hour." Opposition at 10:5–8, ¶ 6. If this
14  were true, then Defendants' counsel could have reimbursed the public for a public servant's official
15  time. But Defendants' counsel chose instead to *pay more* in order to obtain Dr. Tovar's "personal
16  time." All of this confirms (rather than rebuts) the conclusion that Defendants' counsel *retained*
17  Dr. Tovar.

## ARGUMENT

Plaintiffs reiterate the three legal bases for granting a new trail and the facts supporting each.

### A.  The verdict is based upon false evidence.

Defendants do not dispute that even "if substantial evidence supports the jury's verdict, a trial court may grant a new trial if the verdict . . . is based upon evidence which is false." Motion at 2:7–9 (quoting *Hesselbein v. Beckham*, 168 F. Supp. 3d 1252, 1262 (E.D. Cal. 2016)).[2] Defendants assert, however, that "this purportedly 'false evidence' is premised entirely on the notion that

---

[2] Defendants insinuate that in citing *Hesselbein*, Plaintiffs are "attempting to appeal to the Court's memory of its extraordinary grant of a new trial" in that case. Opposition at 5 n.3. To the contrary, and regardless of any *factual* parallels between the two cases, Plaintiffs rely on *Hesselbein* because it accurately states one of the *legal* bases for granting a new trial, as long recognized by the Ninth Circuit and as recently applied by this Court.

in opening and closing statements, '*Defendants' counsel falsely vouched to the jury*' that Dr. Tovar . . . was independent." Opposition at 1:21–25 (emphasis by Defendants).  Emphatically not so:  as documented above, the very first word of Dr. Tovar's *testimony* — "Yes" in answer to Mr. Praet's leading question, "You and I met for the first time out in the hallway this morning?," Appendix at 35:18–20 — was *categorically false*.  And as further documented above, the *testimony* of Dr. Tovar — not merely the opening statement and closing argument of Defendants' counsel — was false in agreeing that he was "independent and impartial" and "not affiliated with the defense."  Appendix at 37:3–7.

Moreover, Defendants are not saved by the fact that some of this testimony might have been literally true under some rarified meanings of various words — for example, that Dr. Tovar and Mr. Praet had not *physically* "met" *in this case*, or that Dr. Tovar was not "affiliated" with the defense because he was not *formally designated* as Defendants' retained expert.  Courts have recognized that "even literally accurate statements may create the presentation of 'false evidence.'" *Rios v. United States*, 2019 WL 5228704, at *18 (S.D. Tex. Aug. 12, 2019) (citing cases), *report and recommendation adopted*, 2019 WL 5225452 (S.D. Tex. Sept. 13, 2019).  Indeed, the law has a name for material half-truths like these:  *fraud*.  Thus, California law recognizes "fraud based on suppression of facts," which includes situations in which "the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead." *Tenet Healthsystem Desert, Inc. v. Blue Cross of California*, 245 Cal. App. 4th 821, 844 (2016); *see also* Cal. Civ. Code § 1710(c) ("deceit" includes "suppression of a fact, by one . . . who gives information of other facts which are likely to mislead for want of communication of that fact").  Under federal law, "deceitful statements of half truths or the concealment of material facts is actual fraud violative of the mail fraud statute." *United States v. Woods*, 335 F.3d 993, 998 (9th Cir. 2003) (quoting *Lustiger v. United States*, 386 F.2d 132, 138 (9th Cir. 1967)); *accord Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit* § 15.32, at 341 (2022 ed.) (Mail Fraud, 18 U.S.C. § 1341:  "Deceitful statements of half-truths may constitute false or fraudulent representations."), *in* Supplemental Appendix at 16; *id.* § 15.35, at 347 (same with respect to Wire Fraud, 18 U.S.C. § 1343), *in* Supplemental Appendix at 18.

If Dr. Tovar's testimony was false, the fact that it was procured by leading questions from Defendants' counsel, who amplified and emphasized the false testimony in his opening statement and closing argument, only confirms that the verdict here was based on "false evidence." Although not precisely on point, case law condemning any criminal "conviction obtained using knowingly perjured testimony" is instructive. *United States v. Houston*, 648 F.3d 806, 814 (9th Cir. 2011). In that circumstance, it is not merely the falsity of the testimony that condemns the verdict but the fact that the government's lawyers knew the falsity but "fail[ed] to correct" it. *Id.* Consequently, a government lawyer who "allows false evidence to go uncorrected when it appears" violates due process, as does a lawyer (it should go without saying) who "solicit[s] false evidence" in the first place. *Hayes v. Brown*, 399 F.3d 972, 978 (9th Cir. 2005) (en banc). "Deliberate deception of a judge and jury is 'inconsistent with the rudimentary demands of justice.'" *Id.* (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). Indeed, "if it is established that the government knowingly permitted the introduction of false testimony reversal is virtually automatic." *Id.* (quoting *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991)); *see also, e.g., United States v. Freeman*, 650 F.3d 673, 679–80 (7th Cir. 2011) (holding that the bar against "knowingly us[ing] false testimony . . . includes 'half-truths' and vague statements that could be true in a limited, literal sense but give a false impression to the jury").

Here, the verdict was "based upon evidence which is false," *Hesselbein*, 168 F. Supp. 3d at 1262, a recognized basis for granting a new trial. Given the outsized importance of that evidence as repeatedly emphasized by Defendants' counsel, *see* Motion at 3–5, leaving the resulting verdict undisturbed would result in a miscarriage of justice.

**B.     The falsity of Dr. Tovar's "independence" is newly discovered evidence.**

Defendants do not dispute that a new trial may be granted on the basis of "newly discovered evidence," which qualifies as such if it "(1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (per curiam) (internal quotation marks omitted), *cited in* Opposition at 6:1–4. Defendants do not dispute that the evidence in question — specifically, Dr. Tovar's "Invoice #123,"

dated July 28, 2022, existed at the time of the trial. But Defendants do dispute Plaintiffs' diligence and the magnitude of the evidence. We address these disputes in turn.

*First*, Defendants contend that "the hourly rate for any party to have Dr. Tovar appear as an examining physician in a civil case . . . was easily ascertained with only minimal diligence," i.e., "either (1) a simple telephone call to Dr. Tovar at any time between 2018 and the 2022 trial, or (2) a simple question on cross-examination about his fees." Opposition at 6:14–18. That is a non-response: Plaintiffs do not complain that Dr. Tovar and Mr. Praet connived to leave Plaintiffs ignorant of Dr. Tovar's "hourly rate"; they complain that the two connived to leave the Court and the jury ignorant of the fact that *Defendants paid that hourly rate* to have Dr. Tovar "assist" them. And Plaintiffs have already explained why they had no good reason to telephone or cross-examine Dr. Tovar about this matter: his very job description includes testifying in "courts of law," Appendix at 98; and Plaintiffs' counsel has "participated in approximately 50 trials in which the pathologist employee of a coroner's office or a medical examiner has testified," but has "*never* experienced a government-employed pathologist (who was an employee rather than an independent contractor) personally charging a party for his or her testimony at expert witness rates regarding an autopsy that the employee conducted within the scope of such employment," *id.* at 104:18–22, ¶ 2.[3]

*Second*, Defendants cite *Smith v. Allen*, 212 F. Supp. 713 (E.D. Va. 1962), for the proposition that "discovery that a witness is paid more than the statutory fee will not serve as grounds for a new trial." Opposition at 6:27–28. In addition to the obvious factual distinctions — counsel paid $50 in "reimbursement . . . for time lost from the witness's own work" as a self-employed plumbing contractor — the result in that case was based on the precept, taken from a 60-year-old version of *Moore's Federal Practice*, that evidence "whose only effect is to contradict to attack the credibility of witnesses will ordinarily not warrant a new trial." *Smith*, 212 F. Supp. at 714. So far as we are

---

[3] It might well be the rule that "non-retained treating physicians are entitled to reasonable compensation beyond statutory fees afforded mere fact witnesses." Opposition at 7:2–3 (citing *Axelson v. Hartford Insurance Co.*, 2013 WL 1261757, at *1 (D. Nev. Mar. 26, 2013)). But Dr. Tovar is not a "treating physician." More fundamentally, Plaintiffs do not challenge the amount of Dr. Tovar's compensation as unreasonable; they challenge the fact that Defendants compensated Dr. Tovar while falsely suggesting to the jury that they did not.

aware, no authority in this millennium or in the Ninth Circuit supports that limitation, and the above-cited "perjured testimony" cases expressly hold to the contrary. *See, e.g., Hayes*, 399 F.3d at 986 (It "is of no consequence that the falsehood bore upon the witness' credibility rather than directly upon defendant's guilt." (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959))).

*Third*, Defendants fail in their attempt to distinguish *In re DePuy Orthopaedics, Inc.*, 888 F.3d 753 (5th Cir. 2018), *cited in* Opposition at 7:5–11. That the offending counsel in *DePuy* paid at least $10,000 while Defendants' counsel here paid at least $4,000 makes no essential difference. The essential similarity, however, is that both the counsel in *DePuy* and Defendants' counsel here "repeatedly emphasized [the witness]'s independence," and counsel's payment to the witness "went unmentioned." 888 F.3d at 788. It is *Jordan v. Maxfield & Oberton Holdings, L.L.C.*, 977 F.3d 412, 420 (5th Cir. 2020), *cited in* Opposition at 7:12–18, that is readily distinguishable. In marked contrast to Plaintiffs here, the moving party in *Jordan* "had this information [about the witness] at trial but *failed to proffer this evidence*," such that "the district court was unable to rule on the evidence's admissibility in the first instance." 977 F.3d at 420 (emphasis added). Moreover, *Jordan* confirms that post-verdict relief is appropriate when "counsel conceal[s] payments to their expert witnesses," especially when such "misrepresentations deprived the [opposing party] of the opportunity to fully examine the [concealing party's] witnesses as paid experts." *Id.*

*Fourth* and finally, Defendants contend that "it is highly unlikely that the easily ascertained fact that Dr. Tovar was reasonably compensated for his subpoenaed appearance at trial . . . would have materially changed the outcome of this case," because "Dr. Tovar testified entirely consistent with his original autopsy report and the final impression of the examining ER doctor that decedent succumbed to cardiac arrest." Opposition at 7:19–23. But Plaintiffs have catalogued "the numerous discrepancies between the autopsy report and the much more biased opinions that Dr. Tovar gave at trial." Appendix at 105:7–8, ¶ 5; *see also id.* at 105:9–15, ¶ 5 (listing at least four discrepancies). The autopsy report, for example, did not refer to video (i.e., body cam) evidence, *see* Supplemental Appendix at 5–10, but Dr. Tovar opined at trial that having "see[n] those videos, . . . I was able to visualize and see where the pressure was applied" to Mr. Landeros while he was under restraint by the defendant officers, Appendix at 50:5–7. Defendants fail to grapple either with these points or

more generally with the detailed explanation of why the newly discovered evidence of Dr. Tovar's "assist[ance]" to Defendants pursuant to his "business" relationship with them "was of such magnitude that disclosure of it earlier would have been likely to change the disposition of the case." Motion at 6:25–26; *see also id.* at 6–8 (so documenting with copious citations to the record).

Therefore, the newly discovered falsity of Dr. Tovar's independence satisfies the requirements for granting a new trial.

### C. Defendants' failure to disclose Dr. Tovar constitutes discovery misconduct and deception.

Finally, Defendants do not deny that "[f]ailure to disclose or produce materials . . . in discovery can constitute 'misconduct' within the purview" of a Rule 59 motion for a new trial, *even if* that failure is "accidental," and that "when the case involves the withholding of information called for by discovery, the [moving] party *need not establish that the result in the case would be altered*." Motion at 8:21–27 (quoting *Jones*, 921 F.2d at 879). Defendants address this point only obliquely, contending essentially that they did not "withhold" Dr. Tovar because at "no time was Dr. Tovar or the scope of his trial testimony ever a secret." Opposition at 2:18–19.[4] But as with Dr. Tovar's hourly rate(s), the secret was not Dr. Tovar's identity or the general subject of his trial testimony; the secret was his undisclosed role as *Defendants' retained and compensated expert*. That secret enabled Defendants' counsel to "repeatedly leverage[] the false contrast between [Plaintiffs'] paid mercenaries and [Defendants'] unpaid altruists to his clients' advantage. At the least, disclosure would have enabled [Plaintiffs] to try to impeach [Dr. Tovar] with evidence of compensation," such that "the deceptions obviously prevented defendants from 'fully and fairly' defending themselves. *DePuy*, 888 F.3d at 792. "Calculated or not, [discovery-related] falsehoods marred [Defendants'] victory. The verdict cannot stand." *Id.*

---

[4] Plaintiffs stated that when "Defendants disclosed their experts, they named George Williams and Dr. Theodore Chan — but not Dr. Jason Tovar," and that "Dr. Tovar first appeared on Defendants' witness list (and not even as a *non*-retained expert), disclosed a mere week before trial." Motion at 9:3–5. Defendants do not dispute that they never disclosed Dr. Tovar as a *retained expert*. But as Defendants have correctly noted, *see* Opposition at 2:10–14, Plaintiffs' statement that Dr. Tovar "first appeared" on Defendants' eve-of-trial witness list is not accurate, and Plaintiffs apologize for that inaccuracy.

**REQUEST FOR SUBPOENA TO DR. TOVAR**

Consistent with the Court's inherent authority, Local Rule 230(h) provides that "the Court may in its discretion require or allow oral examination of witnesses" at hearings on civil motions. In the absence of any declaration from Dr. Tovar, and in light of Mr. Praet's hearsay reporting of his supposed statements, this matter cries out for examining Dr. Tovar under oath. Accordingly, Plaintiffs respectfully request permission to issue him the draft subpoena attached hereto.

As the Court will observe, that subpoena also commands Dr. Tovar to bring with him the following documents or electronically stored information in his possession:

- any record constituting or reflecting what the County of Sacramento "requires" or "allows" or provides the "option" in relation to Dr. Tovar's testimony, as described in Paragraph 6 of the Declaration of Bruce D. Praet, *see* Opposition at 10:1–8, ¶ 6;
- any record constituting or reflecting invoices to or payments from Defendants, Mr. Praet, or Mr. Praet's agents or affiliates; and
- any other record constituting or reflecting any communications with any person listed in the previous paragraph with respect to the instant litigation, including any voicemail or other audio recording.

These document requests are highly relevant, targeted, and non-burdensome.

**CONCLUSION**

The en banc Ninth Circuit has rightly observed that our "criminal justice system depends on the integrity of the attorneys who present their cases to the jury." *Hayes*, 399 F.3d at 988. That observation applies with no less force to our civil justice system, and so when a verdict "is obtained through perjurious or deceptive means, the entire foundation of our system of justice is weakened." *Id.* The verdict here was obtained by these means, and Defendants' deception of the Court and the jury concerning the "independence" of Dr. Jason Tovar warrants a new trial for the three reasons discussed herein.

To prevent a miscarriage of justice, and to deny parties and counsel the incentive to continue this deceptive behavior, the Court should grant a new trial.

///

Respectfully submitted,

Dated: September 21, 2022

**LAW OFFICES OF DALE K. GALIPO**
**LAW OFFICE OF STEWART KATZ**

By      */s/ Stewart Katz*
     Dale K. Galipo
     Stewart Katz

*Attorneys for Plaintiffs*