UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JENNIFER LANDEROS, individually and as successor in interest to DANIEL LANDEROS, Deceased; DEJA LANDEROS, individually and as successor in interest to DANIEL LANDEROS, Deceased; B.M.L., individually and as successor in interest to DANIEL LANDEROS, Deceased, by and through JENNIFER LANDEROS, as Guardian ad Litem; J.J.L., individually and as successor in interest to DANIEL LANDEROS, Deceased, by and through JENNIFER LANDEROS, as Guardian ad Litem; D.F.L., individually and as successor in interest to DANIEL LANDEROS, Deceased, by and through JENNIFER LANDEROS, as Guardian ad Litem; and T.D.L., individually and as successor in interest to DANIEL LANDEROS, Deceased, by and through JENNIFER LANDEROS, as Guardian ad Litem,<br><br>    Plaintiffs,<br><br> v.<br><br>SAMUEL SCHAFER; STEVEN HOLSTAD; JUSTIN PARKER; PATRICK SCOTT; JEREMY BANKS; and CITY OF ELK | No. 2:17-cv-02598 WBS CKD<br><br>MEMORANDUM AND ORDER RE: MOTION FOR NEW TRIAL |

1

Case 2:17-cv-02598-WBS-CKD   Document 144   Filed 11/04/22   Page 2 of 10

| | |
|---|---|
| GROVE, | |
| Defendants. | |

----oo0oo----

Plaintiffs have moved for a new trial under Federal Rule of Civil Procedure 59(a). (Docket No. 130.) The court held an evidentiary hearing on the motion on October 31, 2022.

Pursuant to Rule 59(a)(1)(A), a "court may, on motion, grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." "[E]ven if substantial evidence supports the jury's verdict, a trial court may grant a new trial if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 819 (9th Cir. 2001) (citation and internal punctuation omitted).

Grounds for a new trial include newly discovered evidence and discovery misconduct. Jones v. Aero/Chem Corp., 921 F.2d 875, 878-79 (9th Cir. 1990). A party seeking a new trial on the basis of newly discovered evidence must show the evidence "(1) existed at the time of trial, (2) could not have been discovered through due diligence, and (3) was of such magnitude that the production of it earlier would have been likely to change the disposition of the case." Id. at 878 (citation and internal punctuation omitted). A party seeking a new trial because of misconduct must show either (1) the verdict was obtained through fraud, misrepresentation, or other misconduct,

2

1  by clear and convincing evidence; or (2) the conduct complained
2  of prevented the losing party from fully and fairly presenting
3  his case or defense.  Id. at 878-79 (citation omitted).

4       "[I]n considering a Rule 59 motion for new trial, [the
5  court] is not required to view the trial evidence in the light
6  most favorable to the verdict.  Instead, the district court can
7  weigh the evidence and assess the credibility of the witnesses."
8  Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd., 762 F.3d
9  829, 842 (9th Cir. 2014).  The Ninth Circuit has emphasized that,
10 under Rule 59, the district court has "the duty to weigh the
11 evidence as the court saw it, and to set aside the verdict of the
12 jury, even though supported by substantial evidence, where, in
13 the court's conscientious opinion, the verdict is contrary to the
14 clear weight of the evidence."  Molski v. M.J. Cable, Inc., 481
15 F.3d 724, 729 (9th Cir. 2007) (citation and internal punctuation
16 omitted).

17      Plaintiffs move for a new trial under Rule 59(a)(1) on
18 the basis of false evidence, newly discovered evidence, and
19 discovery misconduct.  Specifically, plaintiffs claim that a new
20 trial is required because (1) defendants did not disclose Dr.
21 Jason Tovar as a retained expert witness; (2) defense counsel
22 implied and/or told the court and jury that Dr. Tovar was an
23 independent witness; and (3) defense counsel told the jury that
24 he and Dr. Tovar had never met, even though defendants paid Dr.
25 Tovar $4,000 for witness fees, defense counsel talked with Dr.
26 Tovar over the phone, and defense counsel previously deposed Dr.
27 Tovar in another case.  In essence, plaintiffs argue that in
28 2020, defense counsel hired Dr. Tovar as a retained expert and

intentionally withheld that information from the court, the plaintiffs, and the jury.

At the October 31, 2022 hearing, the court heard testimony from Dr. Tovar about his role in this case. Specifically, Dr. Tovar is the Sacramento County forensic pathologist who performed the autopsy on Daniel Landeros. He was presented at trial as an impartial expert, not retained by either side, who had nothing to gain personally by testifying in this case. That was the impression that the court, and presumably the jury, got at the time of trial. As it turns out, from his testimony at the hearing on this motion, that was not entirely accurate. When someone calls Dr. Tovar on the Sacramento County telephone line to request his deposition or trial testimony about an autopsy he has performed, he transfers the call or asks them to call back on his personal line. He then offers to consult and testify for a fee of $400 per hour. This fee, the court learned at the hearing on this motion, does not go to the County. Instead, Dr. Tovar does this work on his "personal time" as a sort of "side hustle" and keeps the fee for himself. Dr. Tovar testified that his superiors at the County were fully aware and approved of this procedure.

The court finds that defense counsel Bruce Praet was unaware of Dr. Tovar's arrangement with the County until sometime after the trial. Mr. Praet did not intend to employ Dr. Tovar as a retained expert. Consistent with that intent, Mr. Praet provided Dr. Tovar only with his autopsy report and copies of the materials which had been provided to him at the time he performed the autopsy and prepared his report, including body cam videos of

4

the decedent's arrest.  Mr. Praet was unaware that he could secure Dr. Tovar's testimony for trial by paying anything other than the $400 hourly rate Dr. Tovar told him he charged. Additionally, plaintiffs' counsel would have quickly determined Dr. Tovar's hourly rate if they had contacted the County to arrange for his deposition or trial testimony.[1]

I. Analysis

The court first determines that a new trial is not required based on defendants' failure to disclose Dr. Tovar as a retained expert.  The court agrees that failure to properly disclose experts may be grounds for granting a new trial.  See, e.g., Aero/Chem, 921 F.2d at 878-79.  However, defendants disclosed Dr. Tovar as a non-retained expert, and as such they were not required to disclose him as a retained expert. Federal Rule of Civil Procedure 26(a)(2)(B) states that the disclosure of experts "must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case."  In contrast, non-retained experts such as treating physicians who testify only as to their own observations and conclusions formed during treatment are not required to provide expert reports and need only be disclosed as expert "percipient" witnesses.  See, e.g., Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 824-25 (9th Cir. 2011) (treating physicians are generally not subject to retained expert requirements of Rule 26(a)(2)(B)

---

[1] Notably, plaintiff's own expert disclosures, which listed Dr. Tovar as a percipient expert witness, noted that "[i]t is believed the County of Sacramento charges $315 per hour for Dr. Tovar's testimony."  (Opp'n Ex. 4 at 3 (Docket No. 134-4).)

because they are percipient witnesses of the treatment they rendered, but are subject to these requirements when they offer opinions beyond the scope of treatment rendered).

As discussed above, Dr. Tovar performed the autopsy in this case, wrote the autopsy report, and was called to discuss his own observations and opinions developed during the autopsy and drafting of the report, much like a treating physician would testify of his treatment of a patient. Dr. Tovar then testified consistent with his report. The court recognizes that defense counsel and Dr. Tovar had limited telephone conversations prior to trial and defendants paid Dr. Tovar his customary witness fee after trial. However, plaintiffs have provided no authority, and the court is unaware of any, holding that such limited prior conversations and payment of witness fees after trial transforms a percipient expert witness into a retained expert subject to Rule 26(a)(2)(B). Indeed, it cannot be disputed that non-retained expert witnesses should be paid a reasonable fee by the party taking a deposition.[2] See Fed. R. Civ. P. 26(b)(4)(E)(i) (party seeking discovery must pay expert a reasonable fee for time spent in responding to discovery); Axelson v. Hartford Ins.

---

[2] Plaintiffs rely on, among other cases, In re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Product Liability Litigation, 888 F.3d 753 (5th Cir. 2018), to argue that Dr. Tovar should have been disclosed as a retained expert, though the facts of that case are so egregious that the case is of little help to them. In DePuy, plaintiffs' counsel donated $10,000 to one expert's alma mater five weeks before trial, and after trial, paid that expert $35,000 and another expert $30,000 for their "pro bono" testimony, but plaintiff's counsel specifically represented to the court and the jury multiple times that these experts were not retained and were not paid for their time. Id. at 788-92.

6

Co. of the Midw., No. 2:11-cv-01827-RCJ-GWF, 2013 WL 1261757, at *2-3 (D. Nev. Mar. 26, 2013) (treating physicians are entitled to a reasonable expert's fee for time spent in depositions).

Further, while defense counsel agreed in 2020 to pay Dr. Tovar his normal witness fee for any testimony he provided, such "agreement" was simply an acknowledgement of Dr. Tovar's customary fee, and no payment was made until after his testimony in 2022. Defense counsel also reiterated to Dr. Tovar before trial that he should not review the retained expert reports in this case and should only rely on his own observations and findings. Dr. Tovar then in fact testified as to those observations and findings. Under these circumstances, defendants properly disclosed Dr. Tovar as a non-retained percipient expert witness. Accordingly, the failure to disclose Dr. Tovar as a retained expert witness does not warrant a new trial.

Plaintiffs next contend that a new trial is warranted because defense counsel told the court and jury that Dr. Tovar was an independent witness. Dr. Tovar does apparently charge $400 to litigants who request his testimony. Thus, if plaintiffs had called him at trial (which was a possibility, because Dr. Tovar was listed on plaintiffs' witness list), they presumably would have been subject to the same fee and would have made calls similar to those between defense counsel and Dr. Tovar to arrange for his testimony.[3] The court has also already discussed how Dr.

---

[3] Plaintiffs also insinuate that defense counsel misled the court and jury about Dr. Tovar's trial subpoena. While it seems likely that Dr. Tovar would have appeared without the necessity of a subpoena, the court notes (1) both the court and plaintiffs' counsel recommended that defense counsel subpoena him to ensure his appearance, given possible scheduling issues and

Tovar testified to his own observations and findings formed during the autopsy and drafting of his autopsy report, and did not review any materials beyond what he had in 2016. Under these circumstances, defense counsel's representations of Dr. Tovar as independent were not false and did not result in a miscarriage of justice.

Similarly, defense counsel's statement to the jury that he had never met Dr. Tovar was not false and did not result in a miscarriage of justice. First, the court finds credible Mr. Praet's representation that he did not remember deposing Dr. Tovar in 2018, given the passage of time. Second, there is clearly a difference between meeting someone in person and talking on the telephone, and Mr. Praet believed they were meeting in person for the first time. While plaintiffs' counsel ascribes nefarious purposes to Mr. Praet's statements and these actions, such as bolstering his witness at the expense of plaintiffs' witnesses, the court finds none.

In order to grant a new trial, the court need not find that any omission or misrepresentation of evidence is intentional, or that the result of trial would be different if the evidence had not been withheld or there had been no discovery misconduct. Aero/Chem, 921 F.2d at 879; Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198, 1206 (Fed. Cir. 2005).

---

plaintiffs' counsel's representation that they might not call him as a witness (see Docket No. 130-2 at 22); and (2) defense counsel did in fact issue a trial subpoena to Dr. Tovar. Plaintiffs' counsel speculated at the hearing on this motion that Mr. Praet manufactured a scheduling conflict in order to call his witness during plaintiffs' case in chief and disrupt plaintiffs' presentation. There is no evidence to support this speculation.

Nevertheless, the court has no trouble determining that the verdict in this case was not against the clear weight of the evidence, even taking away Dr. Tovar's testimony. While the case was well litigated on both sides, there was ample evidence supporting the jury's determination that no excessive force was used, particularly the body cam video of the decedent's arrest. Given the circumstances surrounding the incident, the jury reasonably determined that the officers used an appropriate amount of force to restraint the decedent.

The court also cannot help but note that Dr. Tovar's testimony was limited to addressing his autopsy and the ultimate cause of the decedent's death. However, the jury did not reach the issue of causation in its verdict, given its determination that no excessive force was used and that defendants were not negligent. (Verdict Form (Docket No. 114).) [4] Plaintiffs' counsel opined at oral argument that the jury's determination on excessive force may have been influenced by Dr. Tovar's testimony that the cause of death was a heart attack and methamphetamine overdose. While that may have been conceivably possible, the court finds it highly unlikely given the clarity of the court's instructions and the verdict form.

---

[4] The verdict form, agreed upon by the parties, instructed the jury to answer, among other things, (1) whether defendants used excessive force, (2) whether any excessive force was a cause of injury to the decedent, (3) whether defendants acted negligently, and (4) whether any negligence was a substantial factor in causing the decedent's death. (Docket No. 114). The verdict form instructed the jury not to answer whether defendants' excessive force caused the decedent's harm if it found that defendants did not use excessive force, and not to answer whether defendants' negligence was a substantial factor in the decedent's death if it found defendants were not negligent.

1 |         The court has serious questions about the propriety of Dr. Tovar's ability to personally charge $400 an hour for his trial testimony relating to his work as a public servant. However, on the motion for new trial, at issue is whether defense counsel's conduct during discovery or trial intentionally or inadvertently resulted in the presentation of materially false or misleading evidence or a miscarriage of justice.  Plaintiffs have not shown that this to be the case.

        IT IS THEREFORE ORDERED that plaintiff's Motion for New Trial (Docket No. 130) be, and the same hereby is, DENIED.

Dated:  November 4, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE