**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 19 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JENNIFER LANDEROS; B. M. L., guardian ad litem Jennifer Landeros; J. J. L., guardian ad litem Jennifer Landeros; D. F. L., guardian ad litem Jennifer Landeros; T. D. L., guardian ad litem Jennifer Landeros; DEJA LANDEROS,<br><br>            Plaintiffs-Appellants,<br><br> v.<br><br>SAMUEL SCHAFER; STEVEN HOLSTAD; JUSTIN PARKER; PATRICK SCOTT; JEREMY BANKS; CITY OF ELK GROVE,<br><br>            Defendants-Appellees. | No.   22-16866<br><br>D.C. No.<br>2:17-cv-02598-WBS-CKD<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted March 26, 2024
San Francisco, California

Before: PAEZ, NGUYEN, and BUMATAY, Circuit Judges.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Jennifer Landeros and her children ("plaintiffs") appeal the district court's denial of their motion for new trial under Federal Rule of Civil Procedure 59.  We have jurisdiction under 28 U.S.C. § 1291.  Reviewing for abuse of discretion, *see Shimko v. Guenther*, 505 F.3d 987, 993 (9th Cir. 2007), we reverse and remand.

Rule 59 "allows new trials to be granted for historically recognized grounds," *id.*, such as when "the verdict . . . is based upon false or perjurious evidence,"[1] *id.* (quoting *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007)).  When "the conduct complained of prevented the losing party from fully and fairly presenting the [case or] defense," *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000), "[t]he district court must grant a motion for a new trial," *Claiborne v. Blauser*, 934 F.3d 885, 894 (9th Cir. 2019).[2]  Under this standard, "the party need not establish that the result in the case would be altered." *Jones*, 921 F.2d at 879 (quoting *Bunch v. United States*, 680 F.2d 1271, 1283 (9th Cir. 1982)).

In this case, false testimony prevented plaintiffs from fully and fairly presenting their case.  *See De Saracho*, 206 F.3d at 880.  Dr. Jason Tovar, the

---

[1] Because we conclude that plaintiffs are entitled to a new trial based on false evidence, we do not reach their arguments concerning discovery violations and new evidence.

[2] *De Saracho* involved a motion for relief from judgment under Rule 60(b)(3).  "The test to be applied" when evaluating a Rule 59 motion is "borrowed from cases interpreting Rule 60(b)(3)." *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (per curiam).

2

forensic pathologist who performed the autopsy on Daniel Landeros ("Landeros"), made several statements at trial about his purported independence from defendants. These statements were either false or highly misleading. Dr. Tovar testified that he "[a]bsolutely" was "not affiliated with the defense . . . in this case" and did not "have any affiliation with the Elk Grove Police Department." He told the jury that he considered himself "independent and impartial," had "met" defense counsel "for the first time out in the hallway [that] morning," and was testifying "by way of subpoena."

    Yet nearly two years prior to trial, defense counsel signed an undisclosed fee agreement to pay Dr. Tovar $400 per hour for his time "in expert consultation and/or legal proceedings" in the case. Defense counsel agreed to pay Dr. Tovar directly rather than reimburse his employer, the County of Sacramento. Dr. Tovar viewed the arrangement as "working privately . . . , outside of [his] job scope at the . . . coroner's office." Prior to trial, Dr. Tovar spoke with defense counsel by phone "[a] handful of times" and also had "some email communications" with him. Defense counsel told Dr. Tovar which materials to review and, because Dr. Tovar was "not using any coroner resources," provided him with the autopsy report and just two of the "numerous" available bodycam and dashcam videos. After trial, the City of Elk Grove issued a check to Dr. Tovar for $4,000 pursuant to the fee agreement.

Dr. Tovar's false and misleading testimony prejudiced plaintiffs' case. The cause of Landeros's death was a critical issue in the case, and the evidence regarding causation was subject to interpretation. Plaintiffs' expert Dr. Ronald O'Halloran testified that Landeros died of asphyxia brought on by the defendant officers compressing his chest with their body weight. Other evidence—such as Landeros telling the officers, "I can't breathe," and his turning blue—supported that theory. Defense expert Dr. Theodore Chan testified that Landeros died of a methamphetamine-induced cardiac arrest. Although the autopsy report did not mention cardiac arrest, Dr. Tovar testified that he believed it to be the cause of death.

Whether the officers used excessive force thus turned on which experts the jury credited. The defense relied heavily on its portrayal of Dr. Tovar as an independent and trustworthy public servant and of Dr. O'Halloran as a paid expert who would say anything for his clients. In his opening statement, defense counsel told the jury that plaintiffs' counsel had hired Dr. O'Halloran "on at least 15 to 20 cases," and in "[e]very single case [he] has rendered an opinion . . . , at $400 an hour," that "the cops killed [the detainee] with restraint asphyxia." After touting Dr. Chan's credentials as a "[n]ationally recognized expert," defense counsel told the jury that it would "also . . . hear from a third doctor, and that's Dr. Jason Tovar, who hasn't been hired by either side. . . . Dr. Tovar's independent testimony will

4

be Daniel Landeros died of a sudden heart attack resulting from methamphetamine intoxication and other self-induced stressors."

Defense counsel continued to press this theme in closing argument. Counsel again dismissed Dr. O'Halloran's opinion as financially motivated: "he had to maintain his perfect record with [plaintiffs' counsel], that every time somebody dies in custody with the police, it's got to be restraint asphyxia. Every single time I get paid by [plaintiffs' counsel], that's what I'm going to say." Defense counsel contrasted Dr. O'Halloran's opinion with the testimony of "the completely independent chief medical examiner, Dr. Tovar," who was "the key witness in this."

If the jury had known that Dr. Tovar was being paid as a private expert by defendants, it may have viewed his opinion more critically. As the district court instructed the jury, a "witness's interest in the outcome of the case and any bias or prejudice" is one factor to "take into account" when "decid[ing] which testimony to believe and which testimony not to believe." Given the importance of expert credibility in this case, the district court abused its discretion by concluding that Dr. Tovar's false and misleading statements about his independence did not prevent plaintiffs from fully and fairly presenting their case. Therefore, we reverse the district court's denial of plaintiffs' Rule 59 motion and remand for a new trial.

**REVERSED and REMANDED.**