LAW OFFICE OF STEWART KATZ
STEWART KATZ, SBN 127425
Post Office Box 19610
Sacramento, California 95819
Telephone: (916) 444-5678

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER LANDEROS, et al., | Case No. 2:17-cv-02598-WBS-CKD |
| Plaintiffs, | |
| v. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SANCTIONS** |
| SAMUEL SCHAFER, et al., | |
| Defendants. | Date:       September 3, 2024<br>Time:       1:30 p.m.<br>Courtroom: 5 (14th Floor)<br>Judge:      Hon. William B. Shubb |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on September 3, 2024, at 1:30 p.m. in Courtroom 5 (14th Floor) of the above-named Court (Hon. William B. Shubb presiding), located at 501 "I" Street, Sacramento, California 95814, plaintiffs will move for this court, after hearing and providing adequate time for response, to impose sanctions against attorney Bruce Praet pursuant to 18 U.S.C. 1927 , F.R.C. P. 11 and the inherent power of the court.

**I.      Introduction and Relief Requested**

Daniel Landeros, the decedent, died on November 30, 2016, being taken into custody by defendants, members of the Elk Grove Police Department. Plaintiffs brought this excessive force lawsuit under 42 U.S.C. § 1983 and state law. In July and August 2022, the case was tried before a jury, which returned a defense verdict. On plaintiffs' appeal, the Ninth Circuit vacated the judgment and remanded for a new trial. The Ninth Circuit held Dr. Jason Tovar, the Sacramento County pathologist who performed the 2016 autopsy on the decedent and whom defendants called as a witness, falsely testified he was a non-retained expert with no interest in favoring either side, when in fact defendants—through attorney Bruce Praet ("Praet")—had agreed to compensate Dr. Tovar as a retained expert.

As the Ninth Circuit found, Praet made Tovar's illusory independence a major component of his opening statement and argument to the jury. (Memorandum Opinion, ECF No. 155 at 3-5.) Praet knowingly made false representations both to the jury at trial and to this Court in proceedings on plaintiffs' motion for new trial. First, it is now clear Praet knew he had retained Dr. Tovar two years prior to trial and was paying him to testify as a defense expert witness. Praet knew the testimony he elicited from Dr. Tovar proclaiming Tovar's independence was false. Second, in proceedings on plaintiffs' motion for new trial, Praet swore under penalty of perjury that his contact with Dr. Tovar began in June 2022 just before trial, and that he had contacted Dr. Tovar solely as the percipient doctor witness who performed the 2016 autopsy. To the contrary, though, Praet had contacted Dr. Tovar two years prior and entered into a fee agreement as of September 2, 2020, for Dr. Tovar to be as an expert witness testifying in support of defendants' case.

Plaintiffs seek sanctions against Praet for his dishonesty at trial and post-trial in an attempt to cover it up. Specifically, plaintiffs request Praet be ordered to pay plaintiffs their attorneys' fees

and costs directly attributable to trying the case from July 26, 2022, through August 4, 2022, as well as their post-trial fees and costs up through and including oral argument of the appeal.

## II.     Applicable Law

An attorney cannot knowingly present false testimony, lie to or mislead any Court. This is frequently referred to in shorthand as an attorney's duty of candor to the Court. It is codified in various rules of professional conduct including California Rule of Professional Conduct 3.3 Candor Toward the Tribunal. The court can impose an appropriate sanction on any attorney who submits a motion opposition "or any other paper" for an improper purpose or which is known to be frivolous. Fed. R. Civ. P. 11.

In addition, pursuant to 28 U.S.C. § 1927, "[a]ny attorney… who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Federal courts have the inherent power to impose sanctions for a broad range of attorney misconduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 69 (1991); *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). This includes the authority to sanction attorneys not only for known false or misleading statements to the court that clearly qualify as bad faith, but also for reckless misstatements of law or fact made for an improper purpose, such as to attempt to influence or manipulate proceedings. *Fink*, 239 F.3d at 993-94. The Ninth Circuit recently reaffirmed that a violation of the duty of candor as set out in the California Rules of Professional Conduct supports compensatory sanctions. *See Caputo v. Tungsten Heavy Powder Inc.*, 96 F.4th 1111, 1159 (9th Cir. 2024) (finding misconduct based on "extreme lack of diligence in reviewing and approving [the court filing]" regardless of whether the attorney "acted with actual knowledge of the falsity of the claims").

## III.    Additional Background

The scheduling order required that all expert witnesses be disclosed by October 25, 2019. (ECF Nos. 19. 22.) On September 2, 2020, Praet entered into his fee agreement with Dr. Tovar.

On June 29, 2022, Praet sent Tovar materials to review for Tovar's trial testimony.

Trial began on July 26, 2022, and Tovar testified on July 29, 2022. The jury returned a defense verdict on August 4, 2022.

On August 8, 2022, the defense filed their bill of costs, which reflected Praet was billed and

Tovar was paid $4,000.00 for one day of testimony. (See Bill of Costs, ECF No. 116 at 2.)

Plaintiffs filed their new trial motion on September 1, 2022, asserting that Dr. Tovar was an undisclosed retained expert improperly presented as a neutral, unhired, and unaffiliated witness. (ECF No. 130.) On September 12, 2022, Praet filed defendants' opposition to the motion and accompanying Declaration of Bruce Praet. (ECF No. 134.)

On September 21, 2022, plaintiffs filed their reply in support of the new trial motion along with a request for a subpoena to Dr. Tovar. (ECF Nos. 135, 135-2.) Praet opposed allowing a subpoena, stating "Defendants are confident that no new or relevant evidence will result." (ECF No. 137.) The court permitted a subpoena, through which Praet's fee agreement with Dr. Tovar from 2020 and their emails were obtained.

At the October 31, 2022, hearing on the new trial motion, Praet's declaration and, specifically, paragraphs 5 and 6, which are set forth in full in section IV below, came under scrutiny. Together, these paragraphs clearly state Praet discussed with Dr. Tovar "sometime in early June, 2022" two different possible arrangements for compensating Dr. Tovar, based on whether he used his off-duty or on-duty time. (See id.) This Court was concerned about the fact that it appeared, based on the declaration, that Praet had, before the trial, knowingly agreed to pay Tovar more money hiring him individually (Jason Paul Tovar's Company) than through the County of Sacramento's Coroner's Office. Early in this Court's questioning of Praet regarding Dr. Tovar's rate of compensation, Praet stated "I was given no option in 2020 when I signed that agreement."[1] (RT 80:24-25.) In response to the court's inquiry about the apparently contrary statements in the declaration, Praet stated "I'm sorry if it's misleading," but "I only asked him what's the difference [in possible compensation arrangements] now that it's been raised [in the new trial motion]." (RT at 82-83.) He reaffirmed he did not have that conversation before the trial. (Id.) Based on Praet's representation, the court found he was "unaware of Dr. Tovar's arrangement with the County until sometime after the trial" (ECF No. 144 at 4), and denied the motion for new trial.

---

[1] In Praet's declaration, submitted before plaintiffs had the fee agreement, Praet indicated his first contact with Dr. Tovar was in 2022. It was after the filing of Praet's declaration that plaintiffs sought permission to subpoena evidence for the new trial motion, and obtained the fee agreement from 2020 which Dr. Tovar brought to the October 31, 2022 hearing.

1	Although the timeline of Praet's knowledge of the different possible arrangements for Dr. Tovar's compensation was not a focus of the issues on appeal to the Ninth Circuit, Praet addressed the matter during oral argument. reverted to the same chronology set forth in the declaration under which he and Dr. Tovar discussed arrangements for compensation during their pre-trial phone calls:

> Bruce Praet, for the appellees. And I was trial counsel, if I can answer any of the Court's questions. Just to make it clear, I made sure that Dr. Tovar was, in fact, independent when he asked me during our initial phone calls could he "see the expert reports from either side?" I said, "No. I want you to testify solely based on your autopsy with no outside influence." *I called the County of Sacramento because I knew Dr. Tovar had performed the autopsy*. Rather than deal with them, they referred me directly to Dr. Tovar. I had no idea there was any other alternative. *When I called him, he said, "You can either go through the County and pay $385.00 an hour or I can do it on my own time at $400.00 an hour." I said, "Your choice." I had no other conversations with him other than to arrange for the various trial dates* and…

(https://www.ca9.uscourts.gov/media/video/?20240326/22-16866/) (starting at 11:10)

The Ninth Circuit issued its memorandum opinion on April 19, 2024, and the mandate issued on May 13, 2024. The Ninth Circuit's findings are the law of the case. *See United States v. Garcia-Beltran*, 443 F.3d 1126, 1129 (9th Cir. 2006) ("[O]n remand a lower court is bound to follow the appellate court's decision as to issues 'decided explicitly or by necessary implication.'") (quoting *Liberty Mut. Ins. Co. v. EEOC*, 691 F 2d 438, 441 (9th Cir. 1982)).

The Ninth Circuit held "Dr. Tovar's false and misleading testimony prejudiced plaintiff's case" and "Plaintiffs were prevented from fully and fairly presenting their case." (ECF No. 155 at 4-5.) The Ninth Circuit found Tovar made several statements about his "purported independence from defendants. These statements were either false or highly misleading." (Id. at 3.) The Ninth Circuit specifically noted as false or misleading Dr. Tovar's responses to a series of Praet's functionally leading questions which created the false impression that Dr. Tovar was testifying as a disinterested civil servant. These included Dr. Tovar agreeing with Praet that they had "met" for the "first time out in the hallway [that] morning," that Tovar was "independent and impartial," who was "absolutely" not affiliated with either party, that he was testifying by "way of subpoena" and, implicitly, that he was testifying in his capacity as the Chief Forensic Pathologist of the Sacramento County Coroner's office. (Id. at 2-3.) In direct contrast to Praet telling the jury it would "hear from

a third doctor, …Dr. Jason Tovar, who hasn't been hired by either side[,]" the Ninth Circuit held "Dr. Tovar was being paid as a private expert by defendants[.]" (Id. at 4.)

### IV. Praet deliberately elicited Tovar's false and misleading trial testimony and then made affirmative misrepresentations to cover up his misconduct.

Praet knew Dr. Tovar was appearing at trial because the defendants were paying him to do so, rather than because of any subpoena. And Praet knew he had retained Dr. Tovar as an expert, notwithstanding his failure to list him as a retained expert as required by Rule 26.

At trial, in opening statement, Praet accurately predicted to the jury "Dr. Tovar's independent testimony will be Daniel Landeros died of a sudden heart attack resulting from methamphetamine intoxication and other self-induced stressors." (RT 152 at 144:6-7.) However, the autopsy report had not mentioned a heart attack. Instead, Tovar's autopsy report characterized the death of Daniel Landeros as Sudden Death During Restraint and Methamphetamine Intoxication, with no reference to an identified actual cause of death. Also in the autopsy report, Dr. Tovar had noted blunt force injuries as a significant condition and several other findings, all of which related to physical injuries. As noted by the Ninth Circuit, the autopsy report contained no mention of cardiac arrest. (ECF No. 155 at 4.) Praet's accurate prediction of Dr. Tovar's testimony which deviated from his autopsy report suggests not only the extent of their trial preparation, but also that Dr. Tovar's opinion curiously changed after being retained and became more favorable to defendants than what was indicated in the autopsy.

In addition, the following facts demonstrate Praet knew he had retained Dr. Tovar as an expert:

1. On September 2, 2020, Praet signed a Fee Agreement for Dr. Tovar's consulting and or testifying in the Daniel Landeros case. (Katz Declaration, Exhibit 1, Tovar Fee Agreement.) The contract, entitled Fee Agreement, provides that Tovar be paid at a rate of either $400.00 per hour of consultation or $4,000.00 per day of testimony. (The agreement is not a model of clarity as to how the rate was to be calculated.) The payment was to Tovar personally and included his federal EIN number.

2. Praet was billed and Tovar was paid $4,000.00. (See Bill of Costs, ECF No. 116 at 2.) The bill of costs states the $4,000.00 was for one day of testimony. Tovar testified for

one hour and twenty minutes. He was called to the stand at 10:42 am and excused at 12:02 p.m. (Minute Order of July 29, 2022, ECF No. 99.)

3. The invoice dated July 28, 2022, Jason Tovar Company invoice # 123, which Dr. Tovar brought to Court pursuant to subpoena on October 31, 2022, totals $4,000.00, and in contrast with the Bill of Costs, it appears to have been calculated based on 10 hours: 4 hours for trial testimony, 1 hour travel, 4 hours for trial preparation and material review and 1 hour attributed to Praet communications. (ECF No. 116 at 8.) The invoice says "It was a pleasure to assist you with this matter. Thank you for your business." (*Id.*) Billing for trial preparation and attorney communication are expenses typically associated with those incurred by a retained expert.

4. Dr. Tovar provided Praet with his unsigned fee agreement accompanied by a CV (curriculum vitae). A CV is something a retained expert typically provides an attorney prior to entering into an agreement.

5. Praet was told by Tovar that because he was working privately on this case he could/would "not [be] using any coroner resources." (Katz Declaration, Exhibit 2, New Trial Motion transcript, RT 52:11-16.)

6. Praet provided Tovar only the materials which Praet wanted him to review for his trial testimony, the autopsy report and just "two of the numerous available bodycam and dashcam videos." (Memorandum Opinion, ECF No. 155 at 3.)

7. Praet has been the attorney in over 200 federal cases, it is reasonable to assume he is familiar with the rules.

Praet knew or should have known he had retained Dr. Tovar as an expert. Praet committed sanctionable misconduct when he deliberately elicited Dr. Tovar's "false or highly misleading" statements about his "purported independence from defendants[,]" including that Dr. Tovar was testifying as a disinterested civil servant, that they had "met" "for the first time out in the hallway [that] morning," that Tovar was "independent and impartial," and "absolutely" not affiliated with either party, that he was testifying by "way of subpoena[,]" that he "hasn't been hired by either side[,]" and, implicitly, that he was testifying in his capacity as the Chief Forensic Pathologist of the Sacramento County Coroner's office. (Memorandum Opinion, ECF No. 155 at 2-3, 5.)

In addition, it has also become clear Praet made false statements in his declarations and averments to this Court in an attempt to conceal that he had hired Dr. Tovar as a retained expert back in 2020 and confirmed in 2022. Praet's declaration predated plaintiffs' subpoenaing Dr. Tovar and his documents to the October 31, 2022, hearing on the new trial motion. His opposition to that subpoena claimed the proposed subpoena "will produce no new evidence[.]" (ECF No. 137 at 4:28.)

To the contrary, though, the documents produced at the hearing and Dr. Tovar's testimony reveal that Praet's declaration was largely self-serving fiction.

The following paragraphs of Praet's Declaration are of particular significance:

¶5 . Knowing that both parties had listed Dr. Tovar as a witness, I placed a telephone call to Dr. Tovar at the Office of the Sacramento County Medical Examiner sometime early June, 2022. When Dr. Tovar returned my call, he informed me that he had not been previously contacted by any legal counsel regarding this case. In anticipation that Dr. Tovar would be called as a witness at trial by one side or the other, he pulled his original file and confirmed his findings during our perhaps 30 minute conversation.

¶6. In the event that Defendants needed to call Dr. Tovar as a percipient witness, I inquired regarding his fees. Dr. Tovar informed me that while he is required to testify in criminal cases in his role as Chief Medical Examiner, the County of Sacramento allows him to testify in civil matters under either of two arrangements. If Dr. Tovar appears in a civil matter while on-duty, his fees are paid directly to the County at a rate of $365/hour. Alternatively, Dr. Tovar informed me that he has the option to appear in civil matters on his own personal time at a rate of $400/hour.

[….]

¶9. Except for aforementioned telephone calls totaling perhaps one hour, I never met or had any other contact with Dr. Tovar until he appeared at trial on July 29, 2022, in response to that trial subpoena.

(ECF No. 134 at 5-7.)

The affirmative misrepresentations in Praet's signed declaration include the following:

● *Praet's first and only contacts with Dr. Tovar occurred in June and July of 2022, just prior to the July/ August 2022 trial.* This is contradicted by the written fee agreement between Praet and Dr. Tovar (Katz Dec. Ex.1, Tovar Fee Agreement) dated September 2, 2020, and by emails referencing the September retention (Katz Declaration Exhibit 3, 9-1 to 9-2 email chain) and least one substantive conversation in 2020 (Katz Dec. Ex. 3, 9-1 to 9-2 email chain) as well as promising future communications as the then set November 2020 trial date got closer. (Katz Dec. Ex. 3, 9-1

to 9-2 email chain)

● *Except for phone calls with Tovar in June and July of 2022 Praet had no contact with Tovar prior to trial.* As discussed above there were multiple emails as well as the telephonic communication in 2020. (Katz Declaration, Exhibit 4, trial materials email)

● *During their first discussion in June 2022 contact, Dr. Tovar retrieved his 2016 autopsy file and confirmed his 2016 findings in a 30-minute conversation.* This is contradicted by the testimony of Dr. Tovar at the hearing on October 31, 2022, which explained that once he was retained privately on a case, he could no longer access the coroner's office files. Once he was hired by Praet, which occurred in 2020, he was no longer able or willing to access the County Coroner's office records. (Katz. Dec. Ex. 2, New Trial Motion Transcript RT: 52:14-17, 55:4-9, 56:23-58:4.)

● *During Praet's first conversation with Dr. Tovar regarding this case in June 2022, Dr. Tovar told Praet he had not previously been contacted by any attorney regarding this case.* As set forth above and acknowledged at the hearing on October 31, 2022, Praet contacted Dr. Tovar in 2020. It is inconceivable that both Tovar and Praet could have forgotten this fact.

● *Praet first learned about Dr. Tovar's fees for testifying in June 2022.* The 2020 agreement has a rate of $400.00 an hour. This is a conversation that would have had to occur before their fee agreement. The declaration cannot be fairly read as suggesting Praet's discussion of Dr. Tovar's fees only occurred after the trial as Praet represented to this court. Moreover, as addressed above, Praet argued to the Ninth Circuit this discussion occurred pretrial and during their "initial phone calls[,]" which were in 2020.

* By implication, that *Praet had to subpoena Dr. Tovar in order for the defendants to secure his testimony.* (ECF No. 132 ¶8.) In fact, although Praet emailed Tovar a putative subpoena, it was not a valid subpoena. Under Ninth Circuit law, an enforceable or valid subpoena requires that witness fees be tendered at the time the subpoena is served. *See Tedder v. Odel*, 890 F.2d 210, 211 (9th Cir. 1989). (ECF No. 134-5.)

In addition, in the opposition to plaintiffs' motion for new trial, Praet represented "*Beyond this combined one hour of conversations with defense counsel, the remainder of Dr. Tovar's time was his unassisted reviewing his own file and appearing at trial*." (ECF No. 134 at 4.) As discussed above and at the hearing on the motion for new trial, Dr. Tovar did not have access to the actual

files in connection with his autopsy.

Praet's purpose in making false or highly misleading representations is plain – he was seeking to convince the Court that he first contacted Tovar in June 2022 to testify solely as a non-retained expert, one who pursuant to his official county duties had conducted the 2016 autopsy, and that, therefore, he would testify as a percipient expert witness to his 2016 autopsy. The primary purpose of Praet's timeline was to hide the fact that, as found by the Ninth Circuit, Praet had retained Dr. Tovar as an expert witness in 2020 and failed to make the mandatory expert disclosure.

At the hearing on the New Trial Motion, this Court was concerned about the fact that it appeared, based on paragraph 6 of the declaration cited above, that Praet had knowingly chosen before trial to pay Tovar more money hiring him individually (Jason Paul Tovar's Company) than through the County of Sacramento's Coroner's Office. Early in this Court's questioning of Praet regarding Dr. Tovar's rate of compensation, Praet stated, "I was given no option in 2020 when I signed that agreement." (Katz. Dec. Ex. 2, New Trial Motion Hearing Transcript, RT 80:24-25.) This culminated in the following exchange where Praet "corrected" his sworn declaration:

> MR. PRAET: The sentence that talks about the amounts, the 365 or the 400, as represented in the emails that are some exhibit, I only asked him what's the difference now that it's been raised, and he told me if he gets paid by the County, it's 365 an hour; it's $400 an hour for him.
>
> **THE COURT: So you're telling me, as an officer of the Court, that you did not have that conversation before the trial?**
>
> **MR. PRAET: That's absolutely correct, Your Honor.**
>
> **THE COURT: All right.**

(Katz. Dec. Ex. 2, New Trial Motion Hearing Transcript, RT 83:11-20 (emphasis added).) As set forth above, though, in front of the Ninth Circuit, Praet reverted to the chronology set forth in the declaration under which he and Dr. Tovar discussed arrangements for compensation during their pre-trial phone calls.

Sanctions are warranted for Praet's deliberate misleading this Court in connection with the post-trial motions, in pleadings, declarations and oral averments. Separately, Praet's calculated post-trial deceptions provide further support for sanctioning the trial misconduct.

**V.     Sanctions against Praet as Counsel are warranted and appropriate.**

As implicitly found by the Ninth Circuit and shown in this motion, Praet engaged in intentionally calculated misconduct regarding the testimony of Dr. Jason Tovar. Discretionary sanctions under both 18 U.S.C. 1927 and the Inherent Power of the Court are warranted and appropriate.

Praet's intentional and calculated misconduct has caused significant harm to the Court, the legal system, the plaintiffs and plaintiffs' counsel. At trial, it was not possible to un-ring the bell from the impact of Tovar's testimony, particularly because he was the first medical expert and because he testified immediately prior to plaintiffs' medical expert. The extent to which his testimony deviated from the autopsy report reveals his party bias.

Praet is a very experienced federal litigator and trial attorney. He has been the attorney in well over 200 federal cases. (Katz Declaration, paragraph 7.) He has presented numerous seminars to law enforcement, their attorneys and administrators about how to navigate potential legal liability. He is familiar with the Federal Rules of Evidence and the Federal Rules of Civil Procedure. Praet knows the duty of candor owed to every Court and the candor expected of those appearing in this Court.

Praet did not act due to ignorance and mistake. He knew the likely impact of Tovar's false and misleading testimony. He had, in essence, a second retained medical expert testifying in the cloth of the County Medical Examiner. But Praet knew Dr. Tovar was not testifying as the independent chief medical examiner as he argued to the jury. Moreover, he later attempted to cover it up through additional misstatements.

Praet's misconduct has burdened the court system. This case had to go to the Ninth Circuit. Having gone through the first trial and all of the post-trial motions, this Court will now have to spend its resources on a second trial. The time of ten citizens was essentially wasted by sitting as jurors at the first trial. The presentation of false and misleading testimony undoubtedly weakens the public's faith in the legal system.

Praet never sought to amend his expert disclosures or in any way disclose his relationship with Dr. Tovar. Upon being challenged by this Court at the new trial motion hearing as to why he

was paying Tovar more than he would have if he had gone through the County of Sacramento, Praet simply disavowed his declaration, claiming in essence that he, too, was an innocent victim of circumstance and Tovar. Praet averred to the Court with seeming sincerity that his declaration was simply worded incorrectly and that he had only learned of the option to go through the County to obtain Tovar's testimony after the trial. Praet's representations to this Court cannot be reconciled with his later argument to the Ninth Circuit.

The plaintiffs are those most affected by Praet's misconduct. The trial was a difficult and painful experience for each of Daniel Landeros' survivors. They now face a second round of legal tribulations.

Plaintiffs' counsels are on a contingency agreement. As a result of Praet's misconduct, plaintiffs' counsel will have to litigate a second trial, and were forced to bring a new trial motion and to appeal to Ninth Circuit. Plaintiffs' counsel spent significant sums post-trial including hiring of appellate counsel.

Praet, for his part, continues to be paid for his billable hours in this case including those spent defending his own misconduct. Plaintiffs request the Court impose as monetary sanctions, subject to proof, (1) plaintiffs' attorney fees and costs for the first trial (excluding all pretrial work including discovery) and (2) post-trial fees and costs, including those incurred on the new trial motion and the appeal. Should plaintiffs prevail at the second trial and recover attorney fees, the sanctions awarded can be credited to defendants to avoid any double recovery by plaintiffs' counsel.

Praet has unreasonably and vexatiously "multiplie[d] the proceedings" in this case and should be required to personally satisfy the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. 28 U.S.C. § 1927. The degree of his misconduct is severe. But even if the Court finds Praet did not knowingly make false or misleading statements in bad faith, sanctions are nevertheless warranted for his reckless misstatements made for an improper purpose. *See Fink*, 239 F.3d at 994.

For all these reasons, the Court should impose appropriate compensatory monetary sanctions.

Dated: July 3, 2024

Respectfully submitted,

**LAW OFFICE OF STEWART KATZ**

By        */s/ Stewart Katz*
            Stewart Katz

*Attorney for Plaintiffs*