# Exhibit 2

```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF CALIFORNIA
 2                              --oOo--

 3    JENNIFER LANDEROS, ET AL.,   ) Docket No. 17-CV-2598
                                   ) Sacramento, California
 4                  Plaintiffs,    ) October 31, 2022
                                   ) 2:36 p.m.
 5          v.                     )
                                   )
 6    SAMUEL SCHAFER, ET AL.,      ) Re: Motion hearing
                                   )
 7                  Defendants.    )

 8
                        TRANSCRIPT OF PROCEEDINGS
 9              BEFORE THE HONORABLE WILLIAM B. SHUBB
                 UNITED STATES SENIOR DISTRICT JUDGE
10
      APPEARANCES:
11
      For the Plaintiff:      LAW OFFICE OF STEWART KATZ by
12                            MR. STEWART L. KATZ
                              555 University Avenue, Suite 270
13                            Sacramento, CA 95825

14                            LAW OFFICES OF DALE K. GALIPO by
                              MR. DALE K. GALIPO
15                            21800 Burbank Blvd., Ste. 310
                              Woodland Hills, CA 91367
16
      For the Defendant:      FERGUSON PRAET AND SHERMAN by
17                            MR. BRUCE DANIEL PRAET
                              1631 E. 18th Street
18                            Santa Ana, CA 92705

19
                        JENNIFER COULTHARD, RMR, CRR
20                         Official Court Reporter
                          501 I Street, Suite 4-200
21                          Sacramento, CA 95814
                            jenrmrcrr2@gmail.com
22                             (530)537-9312

23    Proceedings reported via mechanical steno - transcript produced
      via computer-aided transcription
24

25
```

1                        I N D E X

2    WITNESSES                                              PAGE

3    JASON TOVAR
             Direct By Mr. Katz ......................... 8
4            Cross By Mr. Praet ........................ 59
             Redirect By Mr. Katz ...................... 71
5

6                       E X H I B I T S

7    PLAINTIFF EXHIBITS
             No. 1     ................................. 10
8            No. 2     ................................. 12
             No. 15    ................................. 17
9            No. 13    ................................. 19
             No. 14    ................................. 30
10           No. 11    ................................. 46

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   someone hire you for more money than they could hire you for
2   less money?  What do they get -- what do they get for getting
3   Jason Tovar's services directly that they don't get by going
4   through the County?
5            THE COURT:  That's what I was getting to an hour
6   ago --
7            MR. KATZ:  Well --
8            THE COURT:  -- so let's see if we can get an answer
9   now.
10           THE WITNESS:  They don't get anything different.
11  They're going to get my expert and honest opinion about the
12  case.  They get my -- based off of my training, experience and
13  expertise, I get qualified as a witness that -- and I provide
14  them the information.  I don't use -- so -- and I'm not using
15  any County resources, because most of that stuff requires me to
16  work outside of work.
17           THE COURT:  You used the County deposition room to
18  take the deposition.
19           THE WITNESS:  It's -- it's a County -- it's a
20  public -- it's a public room.
21           THE COURT:  Well, I can just go in there and use it?
22           THE WITNESS:  Yeah, you can.
23           THE COURT:  Okay.  How about that --
24           THE WITNESS:  You can.
25           THE COURT:  -- Mr. Katz?  You don't need to take

1  several years.  I talked to him once when we did the fee
2  agreement, and then it was -- there was no communication for
3  two years.
4  Q   Well, Sir, in 2020 didn't he provide you materials to
5  review?
6  A   No.  He provided me the materials to review about -- it's
7  in the email that's provided there.  Right before the
8  testimony.  He provided me the autopsy report and then -- and
9  the videos on here to review.
10 Q   Well, you told Mr. Galipo that you didn't have any videos,
11 didn't you?
12 A   No.  I think I said I had a couple of videos.  I don't
13 recall what I said with that, but I -- I said I had the
14 materials provided by Mr. Praet.
15 Q   And, by the way --
16           THE COURT:  Videos?  What videos are we talking about?
17           MR. KATZ:  Of body-worn cameras.
18           THE WITNESS:  Yeah.
19           THE COURT:  Oh, okay.  The ones in this case?
20           MR. KATZ:  Yes, this case.
21           THE COURT:  Okay.  I thought maybe you were talking
22 about videos of autopsies.
23           MR. KATZ:  No.
24 BY MR. KATZ:
25 Q   Do you recall being asked if you had any videos and you

1   said that you don't retain those?
2   A   I don't recall.  I don't retain them at the end, no.
3   Q   Okay.  And did you recall which ones you looked at?
4   A   There were two.  I don't remember what they were called.
5   Q   Okay.  But do you recall, Sir, when he asked you that, you
6   told him that you had no idea which ones you had?
7   A   Correct.  I didn't.
8   Q   That wasn't true, was it?
9   A   That was true.  I don't know what -- I don't know what
10  they're called, Sir.  I don't know what they're called at this
11  time today.  They're a video file that just has a bunch of
12  letters or numbers or something on them.  And it's like, okay,
13  I don't recall what they are.  I don't know what they are.  I
14  don't know what they -- they represent the videos of the
15  body-worn cameras.  I don't know who they are or what
16  they're -- I don't know that information.
17  Q   Well, if you don't know what they are, how could they be of
18  any assistance to you?
19  A   Because I reviewed -- I reviewed the videos initially.
20  Back when I performed the autopsy, there were videos.  I
21  watched numerous videos.  Those were similar videos to that
22  incident.
23  Q   Did you ask Mr. Praet for all the videos?
24  A   I just asked him to provide me whatever it was that --
25  Q   He wanted to give you?

1  A   -- that he had for me to review.  I said I don't want -- I
2  don't -- I don't have the videos.  We don't have videos at the
3  coroner's office, and I'm not using any coroner resources.
4      Business conducted -- I can't ask for -- I'm not going to
5  ask the secretaries for them to print out my report, the
6  documents, the photographs or anything of the sort.  I'm not
7  going to be able to use the County computer logging in from
8  anywhere to review that.
9  Q   But it -- and now when you received the subpoena, the
10 subpoena wasn't for you to bring anything with you, was it?  It
11 was a subpoena --
12 A   No.
13 Q   -- for your personal appearance?
14 A   Correct.
15 Q   But you came here with a file, right?
16 A   Correct.  I had a copy of my report.
17 Q   Given to you by Mr. Praet?
18 A   Correct.
19 Q   So if you were doing this as an official coroner, you would
20 have access to all that information, correct?
21 A   I would have my secretary or our office staff print out all
22 that stuff, yes.
23          THE COURT:  So, you see, if you pay the high price,
24 all you get is testimony without any backup materials.
25          If you pay the low price, you get your testimony with

1    the use of all of County materials.  Is that -- is that a fair
2    statement?
3           THE WITNESS:  That's correct.  And the time of the
4    records.
5           THE COURT:  His question was who would pay the high
6    price if you can get more for the low price?
7           THE WITNESS:  Who would pay the high price?  Whoever
8    wanted to go into the fee agreement with me.  Mr. Praet wanted
9    to pay that.  He didn't -- I mean, I don't -- I don't know.  I
10   get --
11          THE COURT:  That's argumentative.
12          MR. KATZ:  I don't think I have any additional
13   questions for the purpose of this motion to this witness.
14          THE COURT:  All right.  Mr. Praet, can you shed some
15   more light on some of this?
16          MR. PRAET:  I would love to, Your Honor.
17          THE COURT:  Go ahead.
18          MR. PRAET:  Do you want me to do it through questions
19   with Mr. or Dr. Tovar or --
20          THE COURT:  Yes.  Whatever questions you would like to
21   ask, it might shed some more light on this.  Please proceed.
22          MR. PRAET:  I'll try to do it in less than an hour.
23          THE COURT:  I hope so.
24
25

80
Case 2:17-cv-02598-WBS-CKD   Document 160-3   Filed 07/03/24   Page 9 of 11

1  denies retaining him or having any contact regarding his fees
2  until June of 2022, paragraph No. 5, when, in fact, he entered
3  into an agreement, a signed written agreement not for a
4  subpoena but to hire him at $400 an hour back in December of
5  2020, I believe.  Pardon me.  September 2nd of 2020.
6          Be happy to go on to the next point, Your Honor, if
7  you want.
8          THE COURT:  No.  I want to read here.
9          So I guess Mr. Praet, when he gets up here, will have
10 to explain to the Court why he elected to pay him $400 an hour
11 rather than $365 an hour.  Do you want to tell me now,
12 Mr. Praet?
13         MR. PRAET:  Sure, Your Honor.  If you follow the
14 chronology of that declaration, I only inquired about the
15 difference in the fees because it was raised in his motion.
16         When I contacted Dr. Tovar in 2020 -- excuse me.  When
17 I contacted County, I was referred to Dr. Tovar, who sent me
18 the agreement at $400 an hour.
19         When it came up in this case, I contacted him and I
20 said, "How come I got charged $400 an hour?"  That's when he
21 informed me that the County -- if it was on County time was 365
22 an hour and it would be $400 if I retained him on his time off.
23         I didn't know that until it came up in this motion.  I
24 was given no option in 2020 when I signed that agreement.
25         THE COURT:  Okay.  Let me look at the context of this

1    that I learned -- I asked him that.  You can see it in the
2    emails even.
3            THE COURT:  Okay.  But what about the last sentence
4    there?  You say alternatively, "Dr. Tovar informed me."  Are
5    you referring now to the conversation in June of 2022 or
6    sometime later?
7            MR. PRAET:  Well, as stated above, I knew he was
8    appearing in his off-duty time.  I knew I would be paying him
9    $400 an hour.
10           THE COURT:  Right.
11           MR. PRAET:  The sentence that talks about the amounts,
12   the 365 or the 400, as represented in the emails that are some
13   exhibit, I only asked him what's the difference now that it's
14   been raised, and he told me if he gets paid by the County, it's
15   365 an hour; it's $400 an hour for him.
16           THE COURT:  So you're telling me, as an officer of the
17   Court, that you did not have that conversation before the
18   trial?
19           MR. PRAET:  That's absolutely correct, Your Honor.
20           THE COURT:  All right.
21           MR. KATZ:  So moving on from the fact there's no
22   mention of 2020 conversations in any of his declarations, the
23   point is -- as to the new trial motion is, there's an agreement
24   to compensate the witness for his testimony, and that was
25   concealed from the jury, it was concealed from the plaintiffs,

1     (Concluded at 5:51 p.m.)

2

3                     C E R T I F I C A T E

4

5     I certify that the foregoing is a true and correct

6 transcript of the record of proceedings in the above-entitled

7 matter.

8   *[signature: Jennifer Coulthard]*

9   JENNIFER L. COULTHARD, RMR, CRR       November 6, 2022
    Official Court Reporter                      DATE

10   CA CSR#14457

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25