Bruce D. Praet SBN 119430
FERGUSON, PRAET & SHERMAN
A Professional Corporation
1631 East 18th Street
Santa Ana, California 92705
(714) 953-5300 telephone
(714) 953-1143 facsimile
Bpraet@aol.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER LANDEROS, et al. | NO. 2:17-CV-02598 WBS CKD |
| Plaintiffs, | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS** |
| v. | |
| SAMUEL SCHAFER, et al., | **[With Declaration and Exhibits]** |
| Defendants. | DATE: September 3, 2024<br>TIME: 1:30 p.m.<br>CTRM: 5 |

**1.      PREFATORY STATEMENT.**

Plaintiffs' latest, untimely Motion for Sanctions is just the latest in a series of frivolous and harassing personal attacks on defense counsel by Attorney Stewart Katz, who was not even trial counsel, over issues long ago decided. While Defendants continue to believe that this Court was better situated to correctly address the issues regarding the testimony of Dr. Tovar, we must nonetheless accept the fact that Plaintiffs' outside appellate counsel somehow managed to convince a Ninth Circuit panel to grant a new trial.

Procedurally, Plaintiffs were certainly entitled to bring their initial motion for a new trial and to thereafter appeal this Court's denial of that motion to the Ninth Circuit.  However, unwilling to simply accept the Ninth Circuit's ruling, Mr.

1

1  Katz then took the unorthodox step of filing a State Bar complaint against defense
2  counsel which was fortunately summarily dismissed without merit. [See: State Bar
3  letter attached as exhibit "1"] Now, with absolutely no new facts or basis, Mr. Katz
4  is continuing to advance his personal attack on defense counsel with this frivolous
5  Rule 11 motion for sanctions.  This has to stop.

6      If Mr. Katz believes that these ongoing personal attacks might somehow
7  intimidate or discourage Defendants during any upcoming settlement conference
8  or, if necessary, a new trial, he is sadly mistaken.  On the contrary, while defense
9  counsel continues to enjoy a very cordial and cooperative professional relationship
10 with lead trial counsel, Dale Galipo, this unnatural personal vendetta on the part of
11 Mr. Katz actually serves to inhibit any prospects of settlement and further
12 reinforce Defendants' resolve to retry this case to another defense verdict.

13     **2.    THERE IS ZERO BASIS FOR RULE 11 SANCTIONS.**

14     While Mr. Katz claims that this latest motion seeks to persuade the Court to
15 award extraordinary monetary sanctions in the amount of otherwise unavailable
16 attorneys' fees for the entire trial, "the purpose of Rule 11 is to deter rather than
17 compensate." *Cordero v. Stelmilt AG Svcs., 2023 U.S. Dist. LEXIS 172207 (E.D.*
18 *Cal. 2023)* [Quoting 1993 Advisory Comm. Note].  It is perhaps noteworthy that,
19 while the Ninth Circuit granted a new trial based upon a perception that Dr. Tovar
20 had provided misleading testimony, the Ninth Circuit did not award fees or costs
21 to Plaintiffs on appeal.  Ironically, Plaintiffs never even filed a timely Bill of Costs
22 on appeal pursuant to *F.R.App.P., Rule 39*.

23     Moreover, Plaintiffs' current Rule 11 motion is woefully untimely as it
24 should have been served, if at all, promptly after the alleged inappropriate conduct
25 back in 2022. When delayed too long, it should be viewed as untimely. *Cordero,*
26 *supra.* [Again quoting 1993 Advisory Comm. Note] Here, Plaintiffs' Rule 11
27 motion is once again based on the same argument raised in their original motion
28 for a new trial filed way back on September 1, 2022 [Doc. 130].  Even after all of

1  the papers had been filed and the motion argued, Plaintiffs never raised the
2  prospect of Rule 11 sanctions.  While the Ninth Circuit has graciously granted
3  Plaintiffs a new trial, the record on appeal is from 2022.
4        Except for a tiresome rehashing of the same 2022 arguments about Dr.
5  Tovar's allegedly false testimony, Plaintiffs have alleged no new misconduct or
6  specific basis for requesting sanctions.  It is well established that Rule 11
7  sanctions may not be imposed without "sufficient advance notice of exactly what
8  was alleged to be sanctionable." *Foster v. Wilson,* 504 F3d 1046, 1052 (9th Cir.
9  2007).
10        As the Court is well aware, neither this Court, the Ninth Circuit or even the
11  State Bar has ever suggested, much less found, that defense counsel ever made any
12  false misrepresentations at trial.  On the contrary, while the Ninth Circuit
13  concluded that Dr. Tovar apparently misrepresented his independence through his
14  testimony, defense counsel merely referenced Dr. Tovar's subjective opinion
15  testimony during opening and closing arguments (after Plaintiffs' counsel never
16  deposed or inquired about at trial).  As the Ninth Circuit has stressed, courts
17  should exercise "extreme caution" in sanctioning attorneys under Rule 11 to avoid
18  chilling vigorous advocacy.  *Larez v. Holcomb,* 16 F3d 1513, 1522 (9th Cir. 1994)
19        Unsupported by actual trial counsel or even outside appellate counsel,
20  Defendants respectfully request that the Court put an end to this ongoing series of
21  frivolous personal attacks on defense counsel by Stewart Katz.
22        **3.**   **A SUMMARY OF THE FACTS MAY BE HELPFUL.**
23  Since Mr. Katz has a propensity to spin the facts to suit his purpose,
24  Defendants believe that a more neutral view of the facts may be helpful:
25        **A. Payment of Professional Witness Fees to Pathologists is Standard.**
26        Although Defendants have not researched Mr. Katz' claim that he has never
27  paid a percipient forensic pathologist more than the statutory $40 witness fee, his
28  claim is clearly contrary to standard practice and it remains disingenuous to claim

surprise that Defendants were required to pay Dr. Tovar his $400/hour fee.

- As Defendants informed the Court following oral argument on the motion for a new trial, it is accepted practice to pay non-retained forensic pathologists at expert rates pursuant to *California Code of Civil Procedure § 2034.430(b)* expressly requires that any treating or attending physician be paid their standard hourly rate for testimony. This is why Dr. Tovar's 2020 request for $400/hour was never questioned by defense counsel at the time.
- Plaintiffs' trial counsel, Dale Galipo, submitted a declaration in this case [Doc. 130.2, p. 104-105] stating that he has never experienced a government employed pathologist charging expert rates. Although Mr. Galipo parenthetically raised a semantical distinction between independents and employees, he actually filed a Bill of Costs in *Casillas v. Fresno, USDC Case No. 1:16-cv-01042 AWI SAB*, seeking reimbursement for $1,835 in witness fees paid to the non-retained Fresno County Chief Forensic Pathologist, Dr. Gopal, for his testimony about the autopsy he had performed in that case. [See exhibit "2" attached hereto][1]
- Even in the instant case, any claim that Plaintiffs were somehow surprised to learn that Defendants were required to pay Dr. Tovar at expert rates is undermined by the fact that they knew well before trial that it would take at least $315/hour to secure Dr. Tovar's testimony at trial. [See: Plaintiffs' Witness List, Doc. 134-4, p.4]

///

---

[1] While some might view Mr. Galipo's declaration as misleading, Defendants point this out merely to illustrate a well known standard practice of paying expert fees to non-retained forensic pathologists and in no way mean to infer that Mr. Galipo was being dishonest.

- As was discussed at the hearing on the motion for new trial, Attorney Haddad similarly paid Dr. Tovar $1,000 in 2018 as a non-retained expert who had preformed the autopsy in an unrelated case. [Hrg. Transcript, RT:50 attached hereto as exhibit "3"]. Even this Court questioned how it could be possible that Mr. Katz could claim to be unaware of this before the current trial when his co-counsel, Mr. Galipo's office, had been present at Dr. Tovar's testimony in 2018. [Hrg. Transcript, RT:49][2]

- Although unrelated to the instant case, experienced trial attorney Gary Dordick also recently submitted a Bill of Costs seeking $750 paid directly to non-retained Dr. Etoi Davenport, the Orange County forensic pathologist who performed the autopsy in the matter of *Sullivan v. Buena Park, OCSC Case No. 30-2020-01156902 CU-CR-CJC* [See: exhibit "4" attached hereto]

- Not to inject common sense into this matter, but why would defense counsel seek to recover costs for fees paid to Dr. Tovar if there was even the slightest chance that it was somehow improper or unethical? Like virtually every other experienced trial attorney, except apparently Mr. Katz, these fees to the forensic pathologist were simply considered routine.

## B. The Facts Have Never Changed.

As this Court noted several times during oral argument on the motion for a new trial, none of this would have ever even become an issue if Plaintiffs had simply taken the deposition of Dr. Tovar before trial. [See: Hrg. Transcript, RT:89 and 110-111 attached as exhibit "3"]. Similarly, already knowing that it would

---

[2] Unlike Mr. Katz, Defendants are not accusing him of misleading the Court with respect to the nuance of each statement made.

cost at least $315/hour to secure Dr. Tovar's testimony at trial (*supra*), one continues to wonder why a routine question about compensation was never posed during trial, especially if, as they now claim, Plaintiffs suddenly perceived that Dr. Tovar was testifying in contrast with or beyond his autopsy report. Nonetheless, these facts have not and will not change:

- Defense counsel has never hidden or denied signing an agreement in September, 2020, to pay Dr. Tovar $400/hour if the need arose to call him as a witness. [Hrg. Transcript, RT:59-60] This is the exact same agreement Plaintiffs would have been asked to sign if they had simply called the County of Sacramento and, like Defendants, been referred to Dr. Tovar. While this case has revealed that this arrangement between the County and Dr. Tovar might be subject to question, it is in fact how the system worked at the time of this case.

- Consistent with the emails Plaintiffs have attached as their exhibit "3" and "4" to the instant motion and Dr. Tovar's sworn testimony [Hrg. Transcript, RT:55], defense counsel had virtually no further contact with Dr. Tovar until just before trial when Dr. Tovar was sent an email link on June 29, 2022, to access his own materials for review.[3]

---

[3] As an example of the absurdity of the "misrepresentations" Mr. Katz is claiming on the part of defense counsel, Mr. Katz specifically represented to this Court at the hearing on the motion for new trial that "there's no documentation beforehand" that Mr. Praet actually provided Dr. Tovar with only those materials Dr. Tovar had originally reviewed at the time of the autopsy - "he (Praet) misrepresented it". [Hrg Transcript, RT:69] Clearly, however, that is a false statement by Mr. Katz since the very link contained in his own exhibit "4" to this motion reveals exactly what was provided to Dr. Tovar before trial on June 29, 2022. The link is provided here for the Court's own viewing:

https://jferguson-my.sharepoint.com/:f:/g/personal/csherman_law4cops_com/Eu_l KG6XcrNLgymL_dBdsoYB5k1L7mTud6xz0rh4vNVn0A?e=WCKee0

>Although the Ninth Circuit apparently misconstrued the record, extraordinary care was taken to ensure that Dr. Tovar received no materials beyond those which he had originally reviewed as a part of his autopsy examination. [Hrg. Transcript, RT:59 and 69] In order to retain Dr. Tovar's neutrality and independence, his request for any materials from either retained expert was declined. [RT:61]

- Contrary to tiresome accusations by Mr. Katz, defense counsel has never claimed that he was made aware of any option to pay Dr. Tovar other than the originally requested $400/hour prior to trial. As was made clear by defense counsel and the sworn testimony of Dr. Tovar during the hearing on Plaintiffs' motion for a new trial, the difference between paying $365/hour directly to the County versus $400/hour to Dr. Tovar was never raised or disclosed when the 2020 agreement was signed. [Hrg. Transcript, RT:60] On the contrary, it was never disclosed or raised until after trial. [Hrg. Transcript, RT:80-83][4]

Despite the best efforts of Mr. Katz to dissect and confuse each and every word of defense counsel in virtually every context throughout this absurdly prolonged process, the facts have not and will not change.

### 3. CONCLUSION.

As tempting as it may be for Defendants to file their own reciprocal motion for Rule 11 sanctions against Mr. Katz for his frivolous campaign against defense counsel, we have instead elected to take the high road and sent him an email request to avail himself of Rule 11's "safe harbor" rule by withdrawing this

---

[4] With respect to the partial statement of defense counsel at oral argument at the Ninth Circuit, Plaintiffs correctly note that this was merely a brief overview and not an attempt to identify any particular chronology. It was nothing more than a summary of the fee issue, combining the on-duty/off-duty status choice with later post-trial discussions in which fee distinctions were revealed. The panel did not inquire with respect to timing and the record on appeal has not changed.

motion. [See: exhibit "5" attached hereto] Unfortunately, but perhaps predictably, Mr. Katz has refused to withdraw this frivolous motion. [See: Katz email attached as exhibit "6"] While Defendants had sincerely hoped that Mr. Katz would avail himself of this opportunity to save Defendants and the Court time and cost, Defendants will thereafter defer to the Court's discretion whether to thereafter set the matter for an OSC re: Sanctions pursuant to Rule 11 (c)(3) to fulfill the Rule's purpose of deterring such motions made in bad faith.

DATED: July 17, 2024					FERGUSON PRAET & SHERMAN
							A Professional Corporation


						By:	  /s/ Bruce Praet
							Bruce D. Praet,
							Attorneys for Defendants

# DECLARATION OF BRUCE D. PRAET

I, Bruce D. Praet, declare and say:

1. That I am an attorney duly licensed to practice before this and all courts in the State of California. From the outset of this litigation through the present, I have been defense counsel for all Defendants and, except where expressly stated to the contrary, I make this declaration from personal knowledge. If called as a witness, I would testify in conformity herewith.

2. Attached hereto as exhibit "1" is a true and correct copy of the clearance letter I received from the California State Bar on June 11, 2024, regarding the complaint filed by Stewart Katz.

3. Attached hereto as exhibit "2" is a true and correct copy of the Bill of Costs materials submitted by Attorney Dale Galipo seeking reimbursement of witness fees in the amount of $1,835.00 paid to Fresno County Forensic Pathologist for his testimony as a non-retained expert who had performed the autopsy in the unrelated matter of *Casillas v. City of Fresno*.

4. Attached hereto as exhibit "3" are true and correct copies of cited portions of the oral argument on the hearing on Plaintiffs' motion for a new trial on October 31, 2022.

5. Attached hereto as exhibit "4" is a true and correct copy of the Bill of Costs recently submitted by Attorney Gary Dordick seeking reimbursement of witness fees in the amount of $750.00 paid to Orange County Forensic Pathologist Dr. Etoi Davenport who performed the autopsy in the unrelated matter of *Sullivan v. Buena Park*.

6. Attached hereto as exhibit "5" is a true and correct copy of the email I sent to Stewart Katz asking him to withdraw his Rule 11 motion and offering him a 21 day "safe harbor" before considering any sanctions against him. Attached hereto as exhibit "6" is a true and correct copy of the email received from Stewart Katz refusing to withdraw this motion.

7. Notwithstanding attempts by Stewart Katz to create a confusing illusion that my representations have ever been misleading, please allow me to once again make it crystal clear. When I first called the County of Sacramento to contact Dr. Tovar as the forensic pathologist who had performed the autopsy in this case, I was referred directly to Dr. Tovar. While Dr. Tovar explained that he could appear on duty or off duty at that time, he did not inform me that there would be any difference in his hourly rate. In the event that he would need to be called to testify at trial, Dr. Tovar asked me to sign an agreement to pay him his standard $400/hour rate. In light of California Code of Civil Procedure and my experience in other cases, I had no reason to inquire whether there might be some alternate hourly rate and simply informed him that it would be his choice or preference whether he preferred to appear on or off duty.

8. As the Court will recall, both parties had listed Dr. Tovar as a potential trial witness and, when Attorney Galipo expressed uncertainty whether Plaintiffs might be calling him, the Court will recall telling me that I had better subpoena him if we intended to call him. In order to ensure that the forensic pathologist testified about his autopsy exam and critical toxicology results, I served him with a subpoena and he appeared at trial.

9. Having absolutely nothing to hide and, knowing that Plaintiffs were well aware that Dr. Tovar would be paid at least $315/hour (see Plaintiffs' Expert Disclosure), I routinely submitted Dr. Tovar's invoice for $4,000 (one hour of pre-trial discussions and eight hours of trial prep and appearance) as a part of our Bill of Costs as the prevailing party at trial.

10. It was not until Plaintiffs filed their motion for a new trial asserting that they were somehow misled or prejudiced by Dr. Tovar's subjective testimony that he considered himself independent that the issue of his fee arrangement came into question. It was only as a part of our opposition to the motion for a new trial that I
///

recontacted Dr. Tovar and was informed that there was a difference in his hourly rate depending on whether he testified on or off duty.

      I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed by me on July 17, 2024, at Santa Ana, California.

                                                /s/ Bruce D. Praet
                                                Bruce D. Praet