**EXHIBIT "3"**

1

```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF CALIFORNIA
 2                            --oOo--

 3    JENNIFER LANDEROS, ET AL.,   )  Docket No. 17-CV-2598
                                   )  Sacramento, California
 4                    Plaintiffs,  )  October 31, 2022
                                   )  2:36 p.m.
 5               v.                )
                                   )
 6    SAMUEL SCHAFER, ET AL.,      )  Re: Motion hearing
                                   )
 7                    Defendants.  )

 8
                         TRANSCRIPT OF PROCEEDINGS
 9            BEFORE THE HONORABLE WILLIAM B. SHUBB
                 UNITED STATES SENIOR DISTRICT JUDGE
10
      APPEARANCES:
11
      For the Plaintiff:       LAW OFFICE OF STEWART KATZ by
12                             MR. STEWART L. KATZ
                               555 University Avenue, Suite 270
13                             Sacramento, CA 95825

14                             LAW OFFICES OF DALE K. GALIPO by
                               MR. DALE K. GALIPO
15                             21800 Burbank Blvd., Ste. 310
                               Woodland Hills, CA 91367
16
      For the Defendant:       FERGUSON PRAET AND SHERMAN by
17                             MR. BRUCE DANIEL PRAET
                               1631 E. 18th Street
18                             Santa Ana, CA 92705

19
                         JENNIFER COULTHARD, RMR, CRR
20                         Official Court Reporter
                           501 I Street, Suite 4-200
21                          Sacramento, CA 95814
                            jenrmrcrr2@gmail.com
22                             (530)537-9312

23    Proceedings reported via mechanical steno - transcript produced
      via computer-aided transcription
24

25
```

2

```
 1                              I N D E X

 2    WITNESSES                                       PAGE

 3    JASON TOVAR
          Direct By Mr. Katz ......................... 8
 4        Cross By Mr. Praet ........................ 59
          Redirect By Mr. Katz ...................... 71
 5

 6                          E X H I B I T S

 7    PLAINTIFF EXHIBITS
          No. 1    ................................... 10
 8        No. 2    ................................... 12
          No. 15   ................................... 17
 9        No. 13   ................................... 19
          No. 14   ................................... 30
10        No. 11   ................................... 46

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

JENNIFER COULTHARD - UNITED STATES DISTRICT COURT - (530)537-9312

Tovar - Direct by Katz

1   going to be any change, but here at this deposition what I'm

2   doing is independent of the coroner's office."

3   A   Yes.

4   Q   And you then said -- you wanted to point that you weren't

5   working as a -- you weren't testifying as the official coroner

6   or someone with the coroner's office, correct?

7   A   Yes, and that I was working on private time, yes.

8   Q   Okay.  And why is it you didn't make that clear to the jury

9   or the Court in this case?

10  A   Why didn't I?

11  Q   Yes.

12  A   I haven't --

13           THE COURT:  You see, Mr. Katz, I have a real problem

14  with him, as you can gather, but I have a problem with the way

15  you're approaching this, too, because you apparently knew all

16  that before he testified.

17           MR. KATZ:  No.

18           THE COURT:  Okay.

19           MR. KATZ:  Absolutely not.

20           THE COURT:  Okay.  Well, Mr. Galipo, is this the

21  Ainely case?

22           MR. KATZ:  The Ainely case, Your Honor, I can go

23  through line by line of the misstatements -- misstatements that

24  apply to Mr. --

25           THE COURT:  Okay.  It just seems to me that --

JENNIFER COULTHARD - UNITED STATES DISTRICT COURT - (530)537-9312

50

Tovar - Direct by Katz

1    MR. KATZ:  I was not the noticing attorney.

2    THE COURT:  It seems to me he's got this side hustle

3  going.

4    MR. KATZ:  Yeah.

5    THE COURT:  And everybody knows about it.

6    MR. KATZ:  No.

7    THE COURT:  That's what it seems to me.

8    MR. KATZ:  No.

9    Mr. Galipo has one of the plaintiffs in the Ainely

10  case.  ==Michael Haddad's office contacted him.==  ==This is all==

11  ==learned after my new trial motion.==  ==They paid him a thousand==

12  ==dollars.==

13    I asked them, "Was there an agreement?"

14    They said, "I don't think so."

15    The deposition was taken by Ms. Sherman, and she told

16  me that he wouldn't even speak to them.  So I don't know what

17  deal was what.  They just, I guess, gave a thousand dollars.

18  So Mr. Galipo had nothing to do with that payment.

19    THE COURT:  No, but apparently he knew about it.

20    MR. KATZ:  No, he didn't.

21    THE COURT:  He didn't?  Okay.  He's right here, so --

22    MR. KATZ:  Absolutely didn't know about it.  And we're

23  talking about deposition trial, we're talking about expert

24  testimony, which is complete -- honestly, Your Honor, I think

25  it's significantly different.  But, no, it was not -- he wasn't

JENNIFER COULTHARD - UNITED STATES DISTRICT COURT - (530)537-9312

55

Tovar - Direct by Katz

1    several years.  I talked to him once when we did the fee

2    agreement, and then it was -- there was no communication for

3    two years.

4    Q    Well, Sir, in 2020 didn't he provide you materials to

5    review?

6    A    No.  He provided me the materials to review about -- it's

7    in the email that's provided there.  Right before the

8    testimony.  He provided me the autopsy report and then -- and

9    the videos on here to review.

10   Q    Well, you told Mr. Galipo that you didn't have any videos,

11   didn't you?

12   A    No.  I think I said I had a couple of videos.  I don't

13   recall what I said with that, but I -- I said I had the

14   materials provided by Mr. Praet.

15   Q    And, by the way --

16             THE COURT:  Videos?  What videos are we talking about?

17             MR. KATZ:  Of body-worn cameras.

18             THE WITNESS:  Yeah.

19             THE COURT:  Oh, okay.  The ones in this case?

20             MR. KATZ:  Yes, this case.

21             THE COURT:  Okay.  I thought maybe you were talking

22   about videos of autopsies.

23             MR. KATZ:  No.

24   BY MR. KATZ:

25   Q    Do you recall being asked if you had any videos and you

59

Tovar - Cross by Praet

CROSS-EXAMINATION

1                             

2  BY MR. PRAET:

3  Q   Dr. Tovar, just in reverse order, the videos that I sent

4  you, had you previously seen body-worn camera video?

5  A   Yes, during the initial phases of the autopsy.

6  Q   Okay.  So did I provide you with any videos that you hadn't

7  previously seen?

8  A   No.

9  Q   All right.  Had anyone from the plaintiff's side called you

10  in 2020 or any time prior to the actual trial in this case?

11  A   No.

12  Q   If they -- and I believe your testimony is that I called

13  the County and was referred to your number?

14  A   I believe so.  Somehow you -- we ended up talking back then

15  about that, and so whether it was -- most of the time people

16  don't have my personal number, so they'll call the coroner, and

17  then I talk to whoever it is and come to an agreement.  Well,

18  this is a civil matter, we can handle this outside.

19  Q   If someone from the plaintiffs' side had called the

20  coroner's office to arrange for you to testify in this trial,

21  would they have been given the same information?

22  A   Yes.

23  Q   Okay.  And if I understand, the Court referred to it as the

24  low figure is $380 an hour if it goes through the County?

25  A   Somewhere in that, yes.

JENNIFER COULTHARD - UNITED STATES DISTRICT COURT - (530)537-9312

60

Tovar - Cross by Praet

1    Q    And 400 an hour if someone goes through you?

2    A    Correct.

3    Q    Okay.  Was I told that?

4    A    You were told that that -- yeah, because -- well, not at

5    that time.  I said we can handle this privately.

6    Q    Okay.

7    A    Yeah.

8    Q    And you told me it would be $400 an hour?

9    A    Correct.

10            THE COURT:  All right.  Mr. Praet, did he give you the

11   choice?

12            MR. PRAET:  No.

13            THE COURT:  He just said it's the $400 price?

14            MR. PRAET:  Right.

15            THE COURT:  He didn't give you the low-ball number?

16            MR. PRAET:  No.

17   BY MR. PRAET:

18   Q    And I apologize, Doctor, this isn't supposed to be a trial

19   about you or your practices, but the amount of time that you

20   and I spent speaking about this case in total, including

21   arranging for your schedule to be here at the trial, including

22   the fee agreement, going over your autopsy report, was a total

23   of one hour cumulative over a period of two years?

24            MR. KATZ:  Objection, leading.

25            THE COURT:  No.  He's -- overruled.  Go ahead.

JENNIFER COULTHARD - UNITED STATES DISTRICT COURT - (530)537-9312

61

Tovar - Cross by Praet

1          Is that true?

2          THE WITNESS:  That's what I billed for our

3     communication, yes.

4     BY MR. PRAET:

5     Q    And so that was the $400 of consultation time between you

6     and me?

7     A    Yes.

8     Q    All right.  The other $3,600 on your invoice, which I don't

9     have and don't want to take the time, was your travel time and

10    your actual appearance time?

11    A    Yes.  The time I took off from work.

12    Q    And you previously testified that I made it clear to you

13    that you were not being retained as an expert, right?

14    A    Correct.

15    Q    Did you ask me if you could have the expert reports of the

16    retained experts?

17    A    Yes.

18    Q    What did I tell you?

19    A    No.

20    Q    Did I tell you I wanted you to remain impartial and testify

21    only to what you had conducted in your role as the chief

22    medical examiner?

23    A    Yes, you did.

24    Q    Did you, in fact, testify solely to what was in your report

25    in this case?

Tovar - Cross by Praet

1    "What do you want me to look at?"

2          And Mr. Praet, by Mr. Praet's own statements, is

3    giving him instructions.  He's saying, "I don't want you to

4    look at everything.  I want you to look only at these videos.

5    Here's what I'm going to send you."

6          THE COURT:  That's right.  What Mr. Praet is telling

7    us is that he told this witness that "I want you to be just

8    like any other percipient witness.  I am not retaining you as

9    an expert.  I am not asking you to look at anything other than

10   what you've already seen in the course and scope of your

11   employment for the coroner."  So that's where we are.

12         MR. KATZ:  But that's not -- that's --

13         THE COURT:  This whole thing about going on his own

14   time and charging more to do what he was required to do as part

15   of his job is a matter of concern but not an issue in this

16   case.

17         MR. KATZ:  Okay.  Your Honor, there's no documentation

18   beforehand.  He reviewed what he was asked to send.  All of

19   this "I want you to look at everything," there's no

20   documentation of that until after the new trial motion.

21   He's -- of course he's going to say, "I said do everything

22   right"; but, in point of fact, he didn't have him look at

23   everything.  He said, "Here's what I'm going to give you."  And

24   the point is, he misrepresented that --

25         This is argument.

JENNIFER COULTHARD - UNITED STATES DISTRICT COURT - (530)537-9312

80

1    denies retaining him or having any contact regarding his fees
2    until June of 2022, paragraph No. 5, when, in fact, he entered
3    into an agreement, a signed written agreement not for a
4    subpoena but to hire him at $400 an hour back in December of
5    2020, I believe.  Pardon me.  September 2nd of 2020.
6            Be happy to go on to the next point, Your Honor, if
7    you want.
8            THE COURT:  No.  I want to read here.
9            So I guess Mr. Praet, when he gets up here, will have
10   to explain to the Court why he elected to pay him $400 an hour
11   rather than $365 an hour.  Do you want to tell me now,
12   Mr. Praet?
13           MR. PRAET:  Sure, Your Honor.  If you follow the
14   chronology of that declaration, I only inquired about the
15   difference in the fees because it was raised in his motion.
16           When I contacted Dr. Tovar in 2020 -- excuse me.  When
17   I contacted County, I was referred to Dr. Tovar, who sent me
18   the agreement at $400 an hour.
19           When it came up in this case, I contacted him and I
20   said, "How come I got charged $400 an hour?"  That's when he
21   informed me that the County -- if it was on County time was 365
22   an hour and it would be $400 if I retained him on his time off.
23           I didn't know that until it came up in this motion.  I
24   was given no option in 2020 when I signed that agreement.
25           THE COURT:  Okay.  Let me look at the context of this

81

1    paragraph 6 then.  Hold on.
2            Well, Mr. Praet, just looking at the context of
3    paragraph 6, it follows paragraph 5 where you're talking about
4    a telephone call that you placed to Dr. Tovar in June --
5            MR. PRAET:  Right.
6            THE COURT:  -- of 2022.
7            MR. PRAET:  Right.
8            THE COURT:  And you talked in that paragraph about the
9    conversation you had with Dr. Tovar at that time.  Then in the
10   next paragraph it says, "In the event that defendant needed to
11   call Dr. Tovar as a percipient witness, I inquired regarding
12   his fees."  Now it sound like you're saying you made that
13   inquiry in that phone conversation that you had in June of
14   2022.
15           And in the next sentence you say, "Dr. Tovar informed
16   me," et cetera.  Are you saying that this is something he
17   informed you after the fact, or this is something he informed
18   you in June of 2022?
19           MR. PRAET:  He informed -- and I'll make it very
20   clear.  He informed me in 2020 when I signed the agreement
21   after I had called the County and been referred to him, he
22   informed me that his hourly rate was $400 an hour.  I knew that
23   from 2020 moving forward, okay, which is what I say here, that
24   he's telling me in paragraph 6 he's going to appear on his own
25   time, which I'm assuming is the $400 an hour.

Exhibit "3"                    Page 25

82

```
 1              I then inquired of him in this last sentence where it
 2    says, "If Dr. Tovar appears in a civil matter while on duty,
 3    his fees are . . ."   That's something I only learned as a
 4    result of this motion.   I was never told before trial I had the
 5    option to pay him 365 an hour.   That last sentence in paragraph
 6    6 is something I've only been told since this motion was filed.
 7              THE COURT:   Okay.   But the previous sentence beginning
 8    on line 2 and going through 5 talks about part of the
 9    conversation in June of 2022, right?
10              MR. PRAET:   Right.
11              THE COURT:   Okay.   So in June of 2022, you say he
12    informed you that the County of Sacramento allows him to
13    testify under either two -- either of two arrangements.
14              MR. PRAET:   Right.
15              THE COURT:   What did he tell you the two arrangements
16    were?
17              MR. PRAET:   On his off-duty time or on-duty time.
18              THE COURT:   But he didn't tell you that there was a
19    difference in the price?
20              MR. PRAET:   No, he did not --
21              THE COURT:   Okay.
22              MR. PRAET:   -- not until this motion, which is why I
23    put that sentence in there.   It doesn't say he told me that
24    then, and I'm sorry if it's misleading, but if he -- I just
25    explained to the Court what it was that he would be charging
```

JENNIFER COULTHARD - UNITED STATES DISTRICT COURT - (530)537-9312

1    that I learned -- I asked him that.  You can see it in the
2    emails even.
3                THE COURT:  Okay.  But what about the last sentence
4    there?  You say alternatively, "Dr. Tovar informed me."  Are
5    you referring now to the conversation in June of 2022 or
6    sometime later?
7                MR. PRAET:  Well, as stated above, I knew he was
8    appearing in his off-duty time.  I knew I would be paying him
9    $400 an hour.
10               THE COURT:  Right.
11               MR. PRAET:  The sentence that talks about the amounts,
12   the 365 or the 400, as represented in the emails that are some
13   exhibit, I only asked him what's the difference now that it's
14   been raised, and he told me if he gets paid by the County, it's
15   365 an hour; it's $400 an hour for him.
16               THE COURT:  So you're telling me, as an officer of the
17   Court, that you did not have that conversation before the
18   trial?
19               MR. PRAET:  That's absolutely correct, Your Honor.
20               THE COURT:  All right.
21               MR. KATZ:  So moving on from the fact there's no
22   mention of 2020 conversations in any of his declarations, the
23   point is -- as to the new trial motion is, there's an agreement
24   to compensate the witness for his testimony, and that was
25   concealed from the jury, it was concealed from the plaintiffs,

89

1   fact that he stated the cause of death as something
2   inconsistent with your theory.  Now, that's just my thought.
3          MR. KATZ:  Okay.  But I think --
4          THE COURT:  And if you had taken his deposition,
5   probably one of the things you would have asked him is how much
6   he gets paid.
7          MR. KATZ:  Your Honor, if we had taken his deposition,
8   we would have contacted, as indicated on our report -- we would
9   have simply gone through the County of Sacramento.  I would not
10  have asked that question.
11         THE COURT:  And you wouldn't have had to ask that
12  question, because if you had gone through the County of
13  Sacramento, you would have learned that they charge extra to
14  take his deposition.  No doubt about that.  No -- I make that
15  finding that if some -- if anybody calls -- you can call them
16  today and if I said how much is it to have Dr. Tovar come and
17  testify, they will tell you a number like $385 an hour, or
18  something like that.
19         MR. KATZ:  Your Honor, the point is --
20         THE COURT:  So you didn't ask and --
21         MR. KATZ:  He was not -- he was not deposed, but the
22  other point is, Your Honor, is that he was never disclosed.
23  And --
24         THE COURT:  You don't have to disclose witnesses
25  except in your witness list, in your pretrial statement.

JENNIFER COULTHARD - UNITED STATES DISTRICT COURT - (530)537-9312

1    required by reasonable diligence.  Their argument is that they

2    had no reason to do that.  They say that they were satisfied

3    with Dr. Tovar's statement of the cause of death being sudden

4    death during restraint and methamphetamine intoxication.

5            I don't know that I would have been satisfied with

6    that, but they say they were.  And if they are, they say there

7    was no reason for them to make the kind of call that you

8    suggest they should have made.  They had no reason to think

9    that he was going to say anything different, so they didn't

10   want to take his deposition.  They decided not to call him at

11   trial, so they would have no reason to make that phone call and

12   say, "How much does it cost?"

13           MR. PRAET:  Well, as the Court pointed out, any

14   competent attorney, of which they are both very competent,

15   would have taken the percipient pathologist's deposition.  He

16   never testified outside of his report.  In fact, I made it very

17   clear to him, "I don't want you as a retained expert.  I want

18   you to testify only to what's in your report," which included

19   methamphetamine intoxication.  That's in his report.  You see

20   that.  It also, in his report, says 1,500 nanograms per

21   milliliter of meth.  They knew that.  They could have deposed

22   him.  They could have said, "Doctor, are you going to be

23   testifying -- are you going to be called by the defense?"

24           THE COURT:  They didn't even have to ask that.  To me,

25   that's why I asked the question to Mr. Katz.  I think that any

1    good plaintiff's lawyer, as they are, would have wanted to take

2    his deposition just to find out more about what he had to say.

3    He might have made a good witness for them.

4        MR. PRAET:  He might have.

5        THE COURT:  I can't imagine why you wouldn't want to

6    get a better explanation of the cause of death, develop some

7    more information that maybe you could even give to your own

8    expert witness.  I just have a hard time understanding why they

9    didn't want to take the deposition.  I don't know.

10       MR. PRAET:  I mean, and the arrangements for him and

11   Mr. Galipo I'm sure would confirm this.  I said are you going

12   to call him -- in fact, we did it in open court.  "Are you

13   going to call Dr. Tovar?"

14       He said, "We're not sure at this point."

15       We said, "Well, he's got a vacation coming up."

16       And Mr. Galipo said, "You can take him out of order as

17   long as he's after Dr. O'Halloran."

18       I said, "That's fine.  Put your expert on first."

19       There was no attempt to get him in before

20   Dr. O'Halloran.

21       THE COURT:  Do you want to say anything on your own

22   behalf about this question of whether you really believed he

23   was going on vacation?

24       MR. PRAET:  Right.  In fact, today what did he say?

25   He said, "I had to go home and pack."  He took another four

JENNIFER COULTHARD - UNITED STATES DISTRICT COURT - (530)537-9312