LAW OFFICE OF STEWART KATZ
STEWART KATZ, SBN 127425
Post Office Box 19610
Sacramento, California 95819
Telephone: (916) 444-5678

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER LANDEROS, et al., | Case No. 2:17-cv-02598-WBS-CKD |
| Plaintiffs, | |
| v. | **PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR SANCTIONS** |
| SAMUEL SCHAFER, et al., | |
| Defendants. | Date:       September 3, 2024<br>Time:       1:30 p.m.<br>Courtroom: 5 (14th Floor)<br>Judge:      Hon. William B. Shubb |

## I. INTRDUCTION AND OVERVIEW

Attorney Bruce Praet's (Praet) opposition to plaintiffs' motion for sanctions largely if not entirely ignores Praet's enumerated trial misrepresentations and post-trial misrepresentations. Instead of addressing the evidence, arguments or law cited by Plaintiffs, the bulk of the opposition consists of discharging chaff intended to distract this Court from the issues raised in the motion. The chaff includes irrelevant Bills of Costs from other cases, ad hominem attacks on counsel, denigration of the Ninth Circuit, a State Bar complaint, and urging the Court to disregard the Ninth Circuit's decision, blaming *plaintiffs* for giving him the opportunity to enter a dubious arrangement with Dr. Tovar.

The Ninth Circuit found that Dr. Tovar was a retained expert working in his personal capacity. The Ninth Circuit found that Praet had entered into an undisclosed written agreement to provide those services nearly two years prior to the trial. The Ninth Circuit found that during the trial there was "false and misleading testimony" made to conceal the undisclosed agreement and Dr. Tovar's claimed lack of affiliation with the defense. *Those findings are now the law of the case*. But Praet dismisses those findings, asserting (incredibly) that "the Ninth Circuit apparently misconstrued the record" because "outside appellate counsel somehow managed to convince the Ninth Circuit Panel to grant a new trial."

The opposition brief fails to acknowledge let alone explain the specifically alleged post-trial misrepresentations made by Praet. These misrepresentations are in Praet's September 12, 2022 declaration opposing the new trial motion, his opposition to Dr. Tovar's subpoena, statements at the new trial motion hearing, and additional deliberately misleading statements regarding his retention of Dr. Tovar. Praet also ignored all of the legal authority cited for the imposition of sanctions under 28 U.S.C. § 1927 or under the inherent power of the Court. Under that authority and the inherent power of the court, Praet's conduct at trial regarding Dr. Tovar warrants sanctions. In addition, sanctions are warranted for Praet's post-trial misconduct and misrepresentations.

////

////

## II. IT IS UNCONTESTED THAT THIS COURT MAY IMPOSE THE SANCTIONS FOR PRAET'S CONDUCT UNDER EITHER 28 U.S.C. § 1927 OR THE INHERENT POWER OF THE COURT

28 U.S.C. § 1927 authorizes a court to impose sanctions for "excess costs, expenses, and attorney fees reasonably incurred because of" an attorney's misconduct. These are the costs which are enumerated in 28 U.S.C. § 1920 as well as for the attorney fees which are attributable to the attorney's misconduct which multiplied the proceedings.

Sanctions under this statute require that the offending attorney's conduct must, in addition to being unreasonable, be "vexatious." The Ninth Circuit held in *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F3d. 1112, 1118 (9th Cir. 2000), that the "imposition of sanctions under § 1927 requires a finding of bad faith," and an attorney's knowingly false or misleading statement to the Court clearly qualifies as bad faith. *See, e.g., Blixseth v. Yellowstone Mountain Club*, 796 F3d. 1004, 1008 (9th Cir. 2015) (holding that "an unreasonable and irresponsible breach of [the] duty of good faith and candor in dealing with the judiciary . . . supports sanctions under section 1927" (internal quotation marks omitted).

The imposition of sanctions for false declarations under the inherent powers of the court is discussed at length in *Tan v. Konnektive Rewards, LLC*, 2023 WL 4339629, at *3–6 (S.D. Cal. June 7, 2023). Under those powers, a "district court may impose sanctions . . . for 'a broad range of willful improper conduct.'" *Id.* at *3 (quoting *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001)). This includes reckless misstatements made for an improper purpose. See Fink, 239 F.3d at 994.

Praet **does not dispute** that the sanctions sought are available under either 28 U.S.C. § 1927 or through the inherent powers of the Court. Indeed, he does not even cite the statute or otherwise grapple with any of the relevant authorities. Nor has Praet substantively disputed that the evidence of his trial and post-trial conduct qualifies as bad faith as set forth in the case law and fully justifies the relief sought under either § 1927 or the Court's inherent powers.

Praet challenges *only* the authority of the Court to impose sanctions under Federal Rule 11. Because either § 1927 or the Court's inherent powers fully authorize the requested sanctions, the Court need not address Rule 11, and plaintiffs will not discuss it further.

## III. THE OPPOSITION IGNORED MOST OF THE MATERIAL PROVIDING THE FACTUAL BASIS FOR SANCTIONS AFTER THE REPLY

Plaintiffs' motion identifies both specific trial and post-trial conduct warranting sanctions. As discussed in the motion, The Ninth Circuit found that Dr. Tovar was an undisclosed, retained

defense expert witness. They further found Praet repeatedly argued Dr. Tovar's independence and lack of affiliation, and that Dr. Tovar had changed his opinion regarding the cause of Daniel Landeros' death to cardiac arrest. Under the law of the case doctrine, these are established facts that Praet may not re-litigate.

When Circuit Judge Paez at 13:52 of the of the oral argument before the Ninth Circuit (https://www.ca9.uscourts.gov/media/video/?20240326/22-16866/) asked Praet when he first learned that Dr. Tovar was going to testify that the cause of Daniel Landeros' death was cardiac arrest, Praet sidestepped answering the question. Praet's opposition also fails to answer that significant question. The opposition does not mention, acknowledge or explain any of counsel's or his retained expert's enumerated false and/or misleading statements at trial. The failure to disclose a retained expert violated an attorney's obligations under the rubric of Rule 26 disclosures, warranting sanctions. An explanation of why Praet told the jury that Dr. Tovar "hasn't been hired by either side," would reasonably have been expected.

Plaintiffs' motion also seeks sanctions for Praet's post-trial attempts to conceal the timing and nature of his relationship with Dr. Tovar through a patently false and misleading declaration, his objection to Dr. Tovar's subpoena to the New Trial motion and his argument to this Court. Plaintiffs believe this cover-up was motivated by Praet's desire to avoid facing the consequences of having used an undisclosed expert witness who was retained two years before trial. As well as making and orchestrating false and misleading statements to the jury involving Dr. Tovar and entering into a private financial relationship with a government employee to testify regarding matters within his ordinary job duties. This motivation is inferential evidence that these misstatements were intentional and calculated, which a Court may consider in assessing appropriate sanctions.

There is not a single reference in the opposition to Praet's September 12, 2022 Declaration, ECF No. 134 at 5-7, despite this motion's focus on the specific misstatements contained therein. ECF 160, at 8-9. Filed before Dr. Tovar was subpoenaed to produce documents, Praet's declaration emphatically denied any contact with Tovar prior to June 2022. Averring that Praet and Dr. Tovar had first discussed Dr. Tovar's fees in June 2022, and that all of their contact regarding this case was set forth in that declaration. There was no mention of the 2020 expert witness contract, as that

would have been an impossibility if the initial interaction between Dr. Tovar and Praet regarding this case occurred in 2022.

In the opposition, the claim is made that "Defense Counsel has never hidden or denied signing an agreement in September 2020 to pay Dr. Tovar." (ECF. 161 at 6-8.) Praet offers no explanation as to how to reconcile that with the fact that the Ninth Circuit found that Praet and Dr. Tovar had an undisclosed fee agreement. Praet's claim is incongruent with the fact that the opposition to the New Trial Motion, ECF 134, is silent as to the existence of the agreement or any contact between Praet and Dr. Tovar in 2020. Praet filed an opposition to the subpoena which led to discovery of the agreement stating, "Defendants are confident that no new or relevant evidence will result." (ECF No. 137.)

In the reply (ECF 161 at 7), Praet references his statement regarding his retention of Dr. Tovar to the Ninth Circuit but offers no comprehensible explanation regarding that rendition of potential hourly rates for Dr. Tovar. In the declaration accompanying the opposition (ECF 161 at 10, ¶ 7), Praet pivots yet again regarding the timing of his knowledge regarding Tovar's fees. In this iteration, there is now the predicate claim that the agreement was "in the event that he needed to be called at trial." By attempting to focus attention on a potential slight difference of hourly rates, Praet attempts to utilize an end run to absolutely reject the unambiguous and well-founded determination that Dr. Tovar was a retained expert.

Consider the following: One, the language of the agreement signed by Praet to pay Dr. Tovar personally (Jason Tovar's Company) (Exhibit 1) is consistent with what one would expect to see in an expert agreement:

> I understand that Jason P. Tovar, M.D. charges for time spent in both preparation for and participating in expert consultation and/or legal proceedings involving criminal/civil cases. This includes all activities relating to the legal actions such as interview (in person or via long distance communications), depositions, <u>court proceedings and time spent preparing for the above.</u>
>
> I further understand that cancellation or postponement of deposition or court testimony without sufficient prior notice may incur charges if Dr. Tovar has spent time preparing for the above, ….

Two, Dr. Tovar's invoice—dated July 28, 2022, the day before he testified—bills for $4,000.00, which is consistent with their agreement including Dr. Tovar spending time as directed

by Praet.

Three, the $4,000.00 Dr. Tovar was paid was not only for his one hour and twenty minutes of actual testimony. (Billed for 4 hours.) (ECF 99.)

Praet has suggested that his paying Dr. Tovar personally instead of paying the County of Sacramento is just a difference of $15 or $35 an hour, implying that Plaintiffs have succeeded in making a mountain out of a molehill. The distinction that matters is not in the amount of payment, but instead, that Praet paid Dr. Tover personally, failed to disclose Tovar as a retained expert, and subsequently covered up the relationship. The rate differential is simply icing on the cake.

## IV. CHAFF ARGUMENTS RAISED

### A. Other Cases

Praet claims that it is simply standard practice to pay expert witness fees to the individual pathologists who perform autopsies as employees of county coroners' offices and therefore that he did nothing wrong because everyone does it. To support this claim, he attaches Bills of Costs from two other cases, neither of which actually buttress his contention.[1],[2] More importantly, this line of argument suggests a complete misunderstanding of the misconduct underlying the Ninth Circuit's opinion. The Bill of Costs does not explain or justify Praet's failure to disclose the agreement with Tovar or the deception of the jury regarding Dr. Tovar's status as retained expert who was personally paid.

---

[1] Caillas v. Fresno, 1:16-cv-01042, Praet's Exhibit 2, misses the mark for multiple reasons. Contrary to Praet's assertion, the County of Fresno was paid, and **not** Dr. Gopal personally. (See Exhibit 1, Fresno County Check.) There is, further, no indication that anyone was misled regarding the financial arrangements pertaining to Dr. Gopal's testimony. In addition, the reimbursement was for Dr. Gopal's deposition testimony; Dr. Gopal did not testify at trial. The Bill of Costs does not indicate any compensation for activities associated with a retained expert such as consultations with the retaining lawyer and lawyer directed preparation.

[2] Sullivan v. Buena Park, Orange County Superior Court Case No. 30-2020-01156902, Praet's Exhibit 4, is further off target. Expert witness fees in state court come under a specific statutory framework, including Government Code § 68092.5, which is not applicable in federal courts. In addition, Dr. Etoi Davenport was not employed by Orange County but rather by Jugulion Medical Group, who were contracted to do the autopsy, and who received payment. (See Exhibit 2, Davenport Deposition.) The Bills of Cost obtained from the Orange County Court website indicates that the $750 is for one day of testimony. (Attached as Exhibit 3, Sullivan Bill of Costs). The Bill of Costs does not bill for any attorney consultation or directed preparation, which was the vast majority of Dr. Tovar's bill. And most importantly, there is no indication that anyone was misled regarding the financial arrangements pertaining to Dr. Davenport's testimony.

///

### B. State Bar Complaint

Praet's submission as Exhibit 1 of some of his communications with the California State Bar is improper and apparently violates California Business and Professions Code § 6094. See also California Rules Professional Conduct 8.3, comment [10]. The content, handling, status and mechanics of a state bar complaint are irrelevant to the present motion. In any event, in characterizing the communication as a "clearance" letter showing that the (unattached and unspecified) complaint was "summarily dismissed without merit," is not accurate.[3]

### C. Defendant's "Common Sense" Argument

Praet rhetorically asks, ECF 161, at 5, "why would defense counsel seek to recover costs for fees paid to Dr. Tovar if there was even the slightest chance that it was somehow improper or unethical?" The fact is that Praet did attempt to improperly recover as costs money paid to Dr. Tovar. ECF 116 at 2. He admitted this was improper after Plaintiffs objected, ECF 118, withdrawing his claim for all but $40.00, ECF 119 at 1-2. Only Praet can answer his rhetorical question. He could also ask himself why he chose to add insult to injury by seeking costs from Landeros' widow and her five children.

### CONCLUSION

For the reasons stated in the moving papers and herein, this Court should grant Plaintiffs' motion for sanctions against attorney Bruce Praet.

Respectfully submitted,

Dated: July 28, 2024

**LAW OFFICE OF STEWART KATZ**

By _____/s/ Stewart Katz_____
　　　Stewart Katz

*Attorney for Plaintiffs*

---

[3] Plaintiffs' counsel represents that Praet's claim that the referenced complaint is not the subject of an open State Bar investigation is incorrect according to more recently dated information he has received, although Praet may not be aware of this fact.